CLEMENT S. ROBERTS (SBN 209203)
croberts@orrick.com
RAGHAV KRISHNAPRIYAN (SBN 273411)
rkrishnapriyan@orrick.com
LAUREN M. KESSLER (SBN 317834)
lkessler@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

BEN AU (SBN 237854)
ben.au@orrick.com
ALYSSA M. CARIDIS (SBN 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071-1560
Telephone:   +1 213 629 2020
Facsimile:   +1 213 612 2499

PARTH SAGDEO (SBN 325269)
psagdeo@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone:   +1 650 614 7400
Facsimile:   +1 650 614 7401

*Attorneys for Plaintiff CelLink Corp.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CELLINK CORP., <br><br> Plaintiff, <br><br> v. <br><br> MANAFLEX LLC, <br><br> Defendant. | Case No. 4:23-cv-04231-HSG <br><br> **CELLINK'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS MANAFLEX'S STATE-LAW COUNTERCLAIMS** <br><br> Judge: Hon. Haywood S. Gilliam, Jr. <br> Date: February 15, 2024 <br> Time: 2:00 p.m. <br> Ctrm.: Courtroom 2 – 4th Floor <br><br> Demand for Jury Trial |

**TABLE OF CONTENTS**

I. Manaflex's State-Law Counterclaims Are Barred by California's Litigation Privilege .... 2

    A. Each of the requirements of California's litigation privilege is met........................ 2

    B. Manaflex's allegation that CelLink's motives were illegitimate does not vitiate the privilege ................................................................................................. 5

    C. Manaflex's attempts to distinguish *Sharper Image* and *Sliding Door* fail ............. 7

II. Manaflex's State-Law Counterclaims Are Barred by the *Noerr-Pennington* Doctrine ..... 9

    A. Manaflex has not met its burden to specifically plead the "sham litigation" exception ................................................................................................................... 9

        1. Manaflex does not specifically plead that all claims are so clearly invalid as to make CelLink's case objectively baseless.............................. 9

        2. Manaflex does not specifically plead that the '070 Patent is so clearly unenforceable as to make its assertion objectively baseless ......... 10

    B. Manaflex has not pled sufficient facts to allege the *Walker Process* fraud exception ................................................................................................................. 12

III. To the Extent That Manaflex's State-Law Counterclaims Rely on CelLink's Loans, They Should Be Dismissed ........................................................................................ 14

IV. Manaflex's Opposition Confirms That the State-Law Counterclaims Should Be Dismissed with Prejudice ............................................................................................ 14

V. Conclusion ..................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Action Apartment Assn., Inc. v. City of Santa Monica*,
  41 Cal. 4th 1232 (2007) ................................................................................................................2

*Aronson v. Kinsella*,
  58 Cal. App. 4th 254, 262 (1997) ..................................................................................................3

*Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
  326 F.3d 1226 (Fed. Cir. 2003) ....................................................................................................11

*Bylin Heating Sys., Inc. v. M&M Gutters, LLC*,
  No. 2017CV-00505-FCD-KJM, 2008 WL 744706 (E.D. Cal. Mar. 18, 2008) ..................... 3, 4

*Cabell v. Zorro Prods. Inc.*,
  No. 5:15-CV-00771-EJD, 2017 WL 2335597 (N.D. Cal. May 30, 2017) ..................................6

*Carmichael Lodge No. 2103, Benev. & Protective Ord. of Elks of the U.S. v. Leonard*,
  No. CIVS07-2665 LKK/GGH, 2008 WL 1346641, at *5 (E.D. Cal. Apr. 9, 2008) .......................................................................................................................... 6-7

*Cove USA LLC v. No Bad Days Enter., Inc.*,
  No. 8:20-cv-02314-JLS-KES, 2021 U.S. Dist. LEXIS 154443 (C.D. Cal. July 2, 2021) ....................................................................................................................................15

*Delano Farms Co. v. California Table Grape Comm'n*,
  655 F.3d 1337 (Fed. Cir. 2011) ............................................................................................13, 14

*Dippin' Dots, Inc. v. Mosey*,
  476 F.3d 1337 (Fed. Cir. 2007) ....................................................................................12, 13, 14

*Eisenberg v. Alameda Newspapers, Inc.*,
  74 Cal.App.4th 1359 (1999) .........................................................................................................3

*Gamevice, Inc. v. Nintendo Co.*,
  No. 18-CV-01942-RS, 2018 WL 5310792 (N.D. Cal. Aug. 6, 2018) ..................................9, 10

*GFI, Inc. v. Franklin Corp.*,
  265 F.3d 1268, 1274 (Fed. Cir. 2001) ........................................................................................11

*Giuliano v. SanDisk LLC*,
  705 F. App'x 957 (Fed. Cir. 2017) .............................................................................................13

*Grant & Eisenhofer, P.A. v. Brown*,
  No. CV-17-5968-PSG-PJWX, 2017 WL 6343506 (C.D. Cal. Dec. 6, 2017) ..................... 8, 15

*Hagberg v. California Fed. Bank*,
    32 Cal. 4th 350 (2004) ................................................................................................................3

*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*,
    552 F.3d 1033 (9th Cir. 2009) ...................................................................................................13

*Kashian v. Harriman*,
    98 Cal. App. 4th 892 (2002) ...................................................................................................5, 7

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ..............................................................................................................4

*Kottle v. Nw. Kidney Ctrs.*,
    146 F.3d 1056 (9th Cir. 1998) ..................................................................................................11

*Meridian Project Sys. v. Hardin Constr. Co.*,
    404 F. Supp. 2d 1214 (E.D. Cal. 2005) ......................................................................................6

*Modular Arts, Inc. v. Interlam Corp.*,
    No. C07-382Z, 2007 WL 2069862 (W.D. Wash. July 13, 2007) ...............................................6

*Mullaney v. Wilbur*,
    421 U.S. 684 (1975) ....................................................................................................................6

*MultiCraft Imports, Inc. v. Mariposa USA, Inc.*,
    No. CV 16-3975-DMG-AJWX, 2017 WL 3579697 (C.D. Cal. June 8, 2017) .........................8

*Netscape Commc'ns Corp. v. ValueClick, Inc.*,
    684 F. Supp. 2d 699 (E.D. Va. 2010), 704 F. Supp. 2d 544 (E.D. Va. 2010) .........................10

*Oregon Nat. Res. Council v. Mohla*,
    944 F.2d 531, 533 (9th Cir. 1991) ..............................................................................................9

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) ..............................................................................................................4

*Rothman v. Jackson*,
    49 Cal. App. 4th 1134 (1996) .............................................................................................2, 5, 6

*Rubin v. Green*,
    4 Cal.4th 1187 (1993) .............................................................................................................3, 4

*Rusheen v. Cohen*,
    37 Cal. 4th 1048 (2006) ..............................................................................................................8

*Sharper Image Corp. v. Target Corp.*,
    425 F. Supp. 2d 1056 (N.D. Cal. 2006) ........................................................................2, 3, 7, 8

*Silberg v. Anderson*,
    50 Cal.3d 205 (1990) ......................................................................................................2, 5, 6, 7

*Sliding Door Co. v. KLS Doors, LLC*,
    No. EDCV 13-00196 JGB (DTBx), 2013 WL 2090298 (C.D. Cal. May 1,
    2013) ...........................................................................................................................7, 8

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) ..................................................................................................6

*Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*,
    537 F.3d 1357 (Fed. Cir. 2008)..............................................................................................10

*Therasense Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011)........................................................................................11, 12

*TP Link United States Corp. v. Careful Shopper LLC*,
    No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065 (C.D. Cal. Mar.
    23, 2020) ................................................................................................................................15

*TransWeb, LLC v. 3M Innovative Props. Co.*,
    812 F.3d 1295 (Fed. Cir. 2016)..............................................................................................13

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
    No. C 12-2582 CW, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013)............................................8

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*,
    814 F.Supp.2d 1033 (S.D. Cal. 2011)......................................................................................8

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ...............................................................................................10

# INTRODUCTION

Manaflex's opposition is based on allegations found nowhere in its counterclaims and legal theories found nowhere in the case law. With respect to the facts, Manaflex recasts its tort claims—which, as pleaded, are based on alleged *post-litigation* "false and misleading representations to Manaflex's current and prospective clients regarding Manaflex's [sic] including, but not limited to, CelLink asserting that it had a valid patent … that Manaflex was infringing"—as instead being based on supposed *pre-litigation* conduct involving the Patent Office. *See* Answer to Complaint ("Answer"), ECF No. 37, ¶ 128; *see also id.* ¶¶ 136-37, 143, 145. Manaflex cannot rewrite the operative pleadings in its opposition brief, especially since it is no accident that the state law counterclaims, as currently pleaded, are based on those post-litigation statements—they wouldn't be viable without the alleged statements from CelLink to Manaflex's customers.[1] But because those statements are protected by the litigation privilege and the *Noerr-Pennington* doctrine, the state law counterclaims fail.

With respect to the law, Manaflex attempts to distinguish on-point case law by inventing distinctions expressly rejected by the cases themselves. Manaflex argues the protections of the litigation privilege and the *Noerr-Pennington* doctrine do not apply to communications with "potential" customers, or communications that are alleged to be fraudulent. The case law says the opposite: Communications with potential customers *are* protected, as are allegedly fraudulent communications.

Because Manaflex does not suggest that it can plead any theory of liability that does not depend on the protected statements, there is no point in granting leave to amend. The state law counterclaims should be dismissed with prejudice.

---

[1] Manaflex does not even bother to defend the only remaining theory of liability it pleaded—that CelLink "likely" didn't disclose that the '070 patent was invalid and that this was "unlawful" conduct that can give rise to an unfair competition claim. Opposition to Motion to Dismiss ("Ans. Br."), ECF No. 52, at 16-17. Instead, it hitches its wagon to the "unfair" and "fraudulent" prongs of the unfair competition statute, but its allegations with respect to those prongs are based on the same protected litigation-related conduct discussed throughout CelLink's briefing.

# DISCUSSION

**I.  Manaflex's State-Law Counterclaims Are Barred by California's Litigation Privilege**

**A.  Each of the requirements of California's litigation privilege is met.**

California's litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990).  CelLink's filing of this suit and the alleged communications informing Manaflex's actual and potential customers of CelLink's claims in this suit are protected by the privilege.[2]

**Prong one:** There is no dispute that prong one can be satisfied (such that the litigation privilege can bar a counterclaim) even when the counterclaim is based on statements made outside of legal papers.  Manaflex admits that "certain extrajudicial actions can sometimes fall within prong one" and that "CelLink is correct that some courts in some circumstances have interpreted this prong as covering publications to nonparties 'in the course of a judicial proceeding in order to achieve the objects of the litigation'" (and Manaflex does not contend that any courts have held the contrary).[3]  Ans. Br. at 4.  Manaflex attempts to come up with distinctions between this case and the cases that found prong one satisfied, but those distinctions cannot be squared with the caselaw.

---

[2] Manaflex does not dispute that the filing of the complaint is privileged, so the discussion below focuses on the alleged CelLink communications.  Motion to Dismiss ("Op. Br."), ECF No. 44, at 6-11; *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007) ("We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action.").

[3] Although Manaflex notes that republications to "nonparticipants in the action" may not be privileged, there is no dispute that that exception is inapplicable here.  CelLink pointed out—and Manaflex does not dispute—that the exception does not apply to non-litigants with a "substantial interest in the outcome of the pending litigation" and that Manaflex's customers fit that description.  Op. Br. at 8-9, 11 (citing *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1060 (N.D. Cal. 2006)).  The case CelLink cites regarding republications to nonparticipants involved statements made *to the press*, not actual or potential customers.  *See Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1141-42 (1996).

First, Manaflex argues that the exception may not apply to pre-suit communications. Ans. Br. at 4. That's wrong. "When litigation is not yet underway, statements may still meet the requirement of 'some connection or logical relation to the action' if an action is 'contemplated in good faith and under serious consideration.'" *Sharper Image*, 425 F. Supp. 2d at 1078 (quoting *Aronson v. Kinsella*, 58 Cal. App. 4th 254, 262 (1997); *see also Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal.App.4th 1359, 1380 (1999) ("the actual good faith contemplation of an imminent, impending resort to the judicial system for the purpose of resolving a dispute" suffices to satisfy prong one); *Hagberg v. California Fed. Bank*, 32 Cal. 4th 350, 361 (2004) ("Many cases have explained that" the privilege applies to "statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit"); *Rubin v. Green*, 4 Cal.4th 1187, 1194 (1993) (privilege extends to communications that have some relation to anticipated litigation). Not that Manaflex's counterclaims, as pleaded, depend on pre-suit communications at all: The *only* statement in Manaflex's counterclaims that even potentially pertains to pre-suit communications—a vague, passing suggestion, found dozens of paragraphs before the state law counterclaims, claiming that "[i]n or around the Summer of 2023, CelLink's salesforce began disparaging Manaflex to individuals within the industry and saying that CelLink was going to come after Manaflex"—is too threadbare to support the state law counterclaims (which, indeed, do not expressly reference that allegation at all). Answer ¶ 104. But even if that was not the case, those communications evidently pertain to anticipated litigation, "contemplated in good faith and under serious consideration"—indeed, that is the litigation before the Court today. Thus, all the statements on which Manaflex's counterclaims are based, whether pre-suit or post-suit, satisfy prong one.

Second, Manaflex suggests that the litigation privilege does not apply if the "communications are evidence of an overall pattern and practice of unlawfully procuring patent rights and creating a monopoly"—but it alleges no such pattern and practice here. Ans. Br. at 4 (citing *Bylin Heating Sys., Inc. v. M&M Gutters, LLC*, No. 2017CV-00505-FCD-KJM, 2008 WL

744706, at *6 (E.D. Cal. Mar. 18, 2008)).[4]  Even if its inequitable conduct allegations as to the '070 patent were correct, one instance does not constitute a "pattern and practice," any more than one swallow makes a summer.

Third, Manaflex contends that its "state-law claims rely at least in part" on conduct.  Ans. Br. at 3-4.  But it does not deny that those claims cannot survive absent CelLink's alleged statements to Manaflex's customers—that, presumably, is why *those* statements are given as the basis for the claims under the headings for Counts Three to Five and pre-suit happenings barely merit a mention.  Answer ¶¶ 125-47.  Those statements are protected, dooming the state law counterclaims.  Without the protected communications, Manaflex cannot allege that CelLink knowingly interfered with Manaflex's economic relationships with customers, as required by Manaflex's intentional interference with prospective economic advantage claim.[5]  Without these protected communications, Manaflex similarly cannot allege that CelLink knowingly interfered with Manaflex contractual relationships with customers, as required by Manaflex's intentional interference with contractual relations claim.[6]  And, as the California Supreme Court explained, Manaflex cannot "plead around" litigation privilege by "relabeling the nature of the action as one brought under the unfair competition statute."  *Rubin*, 4 Cal. 4th at 1201 (holding that tortious-

---

[4] *Bylin*, in fact, supports *CelLink's* position because it dismissed allegations based on the plaintiff's contacting the defendant's "distributors and/or purchasers" and "inform[ing] them that [the plaintiff] had filed suit against [the defendant] for patent and trademark infringement."  2008 WL 744706, at *1.

[5] The elements of intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant."  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

[6] The elements of intentional interference with contractual relations are: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004).

interference claims barred by litigation privilege cannot be recast as unfair competition claims).

**Prong two:** Manaflex does not dispute that the alleged communications with Manaflex's customers meet prong two. Ans. Br. at 4.

**Prongs three and four:** Prongs three and four are met because the purpose of CelLink's communications was to achieve the *very same* relief it seeks in this litigation: stopping Manaflex's ongoing misappropriation. Manaflex's suggestion (Ans. Br. at 4) that CelLink "glosse[d] over" this point is puzzling, given that the point was addressed at length in CelLink's opening brief. Op. Br. at 8. CelLink explained that its alleged communications meet the third prong because they were made to achieve the same relief (regaining market share lost due to Manaflex's infringement and misappropriation) sought through the litigation. Op. Br. at 8; *see also* Complaint ¶ 35. And CelLink explained that its alleged communications meet the fourth prong "because they 'have some connection or logical relation to the action'—indeed, they are *about* the action." Op. Br. at 8 (quoting *Silberg*, 50 Cal. 3d at 212).

The case Manaflex cites in support serves only to highlight why these prongs are met here. In *Rothman*, the court found that statements made by Michael Jackson's attorney to the press were nonprivileged because the statements were intended to achieve relief—"to vindicate Jackson in the forum of public opinion"—that could not be "awarded by [the] courts." 49 Cal. App. 4th at 1145, 1147-48. Here, by contrast, the relief that CelLink seeks—stopping Manaflex—is precisely what an injunction "awarded by [the] courts" would achieve.

### B. Manaflex's allegation that CelLink's motives were illegitimate does not vitiate the privilege.

It is blackletter law that "[t]he litigation privilege is absolute; it applies, if at all, regardless of whether the communication was made with malice or the intent to harm." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002). Thus, "communications made in connection with litigation do not necessarily fall outside the privilege simply because they are, or alleged to be, fraudulent, perjurious, unethical, or even illegal." *Id.* at 920. Manaflex nevertheless attempts to invent a "sham litigation" exception to the California litigation privilege, though it does not bother to suggest that such an exception is actually met. Ans. Br. at 3.

Unlike the *Noerr-Pennington* doctrine, California's litigation privilege has no such exception. Indeed, the California Supreme Court has found that the privilege protects even allegedly fraudulent communications, *Silberg*, 50 Cal. 3d at 218, and even *Rothman*—the case on which Manaflex hangs its hat—explains that the California Supreme Court "has specifically disapproved [of] any interpretation of [prongs three and four of the litigation privilege test] as a test of the motives, morals, ethics or intent of the person claiming the privilege." 49 Cal. App. 4th at 1141.

In support of its claim that there *is* a "sham litigation" exception, Manaflex cites *Cabell v. Zorro Prods. Inc.*, No. 5:15-CV-00771-EJD, 2017 WL 2335597, at *12 (N.D. Cal. May 30, 2017), and *Meridian Project Sys. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1223 (E.D. Cal. 2005). Neither of these are California state court cases, which are authoritative when deciding the contours of a state law doctrine. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law," and federal courts "are bound by their constructions"). The statement in *Cabell* that the litigation privilege does not protect "a mere sham" cites to two cases, but both involved *Noerr-Pennington* immunity, and did not discuss the California litigation privilege at all. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 938 (9th Cir. 2006); *Modular Arts, Inc. v. Interlam Corp.*, No. C07-382Z, 2007 WL 2069862, at *3 (W.D. Wash. July 13, 2007). (Indeed, the latter case involved a Washington statute, not a California cause of action.) In any event, *Cabell* was not decided on sham litigation grounds, so the passing statement is dicta.

*Meridian*, an out-of-district case, does not state that a "sham litigation" exception applies to the litigation privilege. It stated that the litigation privilege did not protect a pre-litigation meeting with the defendant's customers that "was not a good faith effort to forestall litigation, but merely an effort to discourage the customers from purchasing [the defendant's] product." *Meridian Project Sys.*, 404 F. Supp. 2d at 1223. As a later case from the same district explained, *Meridian* simply stands for the proposition that:

> [T]he party seeking to invoke the privilege must have a 'good faith' belief that litigation will be commenced—not that the statement sought to be protected must

be made in 'good faith' in a conventional sense.  To the contrary, if the litigation privilege applies, then the protection provided is absolute, even when a statement is made with malice.  *Kashian*, 98 Cal. App. 4th at 912.  Plaintiff's interpretation of the good faith requirement was expressly rejected by the California Supreme Court in *Silberg*, 50 Cal.3d at 218 . . . .

*Carmichael Lodge No. 2103, Benev. & Protective Ord. of Elks of the U.S. v. Leonard*, No. CIVS07-2665 LKK/GGH, 2008 WL 1346641, at *5 (E.D. Cal. Apr. 9, 2008).  But as noted above, there is no suggestion that CelLink lacked a good faith belief that litigation would be commenced—obviously, since litigation *was* commenced.  As such, the litigation privilege applies.

### C. Manaflex's attempts to distinguish *Sharper Image* and *Sliding Door* fail

As CelLink's opening brief pointed out, the litigation privilege has been applied to bar state-law counterclaims under circumstances that parallel those here in *Sharper Image*[7] and *Sliding Door Co. v. KLS Doors, LLC*, No. EDCV 13-00196 JGB (DTBx), 2013 WL 2090298 (C.D. Cal. May 1, 2013).  The arguments Manaflex advances to distinguish these cases were rejected *by the cases themselves*.

Manaflex asks this Court to ignore *Sharper Image* because "no prelitigation communications or conduct were at issue, nor were any communications to potential customers," and later argues the same with respect to *Sliding Door*.  Ans. Br. at 5-6.

With respect to the first attempted distinction, as detailed above, the litigation privilege *does* apply to prelitigation communications.  *Sharper Image* expressly noted as much, making Manaflex's statement that it does not inexplicable.  *Sharper Image*, 425 F. Supp. 2d at 1078 ("When litigation is not yet underway, statements may still meet the requirement of 'some connection or logical relation to the action' if an action is 'contemplated in good faith and under serious consideration.'").

Manaflex is also wrong that the litigation privilege does not apply to communications

---

[7] Manaflex notes that in *Sharper Image*, the parties disputed only prong two, but fails to draw the logical conclusion:  The defendant there, unlike Manaflex, understood that there was no disputing the other prongs on facts like the ones in this case.  Litigants do not typically leave arguments on the table unless forced to do so by the weight of authority.

with *potential* customers.  Again, it is hard to see why Manaflex thought this was a basis for distinguishing CelLink's cases when the very first paragraph of *Sliding Door* notes that "Defendants filed a counterclaim against Plaintiff . . . in relation to Plaintiff's communication with ***potential*** customers regarding the pending litigation." *Sliding Door*, 2013 WL 2090298, at *1.[8]  On facts materially identical to those here, the court found the communications privileged.

Even aside from *Sliding Door*, courts have repeatedly and consistently held communications with potential customers to be subject to the litigation privilege.  *MultiCraft Imports, Inc. v. Mariposa USA, Inc.*, No. CV 16-3975-DMG-AJWX, 2017 WL 3579697, at *4 (C.D. Cal. June 8, 2017) ("[T]he [litigation] privilege protects the Client Letters' statements that alerted Multicraft's and Mariposa's customers and ***potential customers*** to the underlying MultiCraft–Mariposa litigation."); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, No. C 12-2582 CW, 2013 WL 368365, at *11 (N.D. Cal. Jan. 29, 2013) (holding that emails from plaintiff to its customers (i.e., defendant's potential customers) informing them of patent infringement lawsuit against defendant were privileged); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC,*, 814 F.Supp.2d 1033, 1040-41 (S.D. Cal. 2011) (finding that litigation privilege protected patentee's communications with those "***considering business*** with [the accused infringer]").  In contrast, Manaflex does not cite even one case in which a court found communications unprivileged because they were to potential (and not actual) customers.

Manaflex also attempts to distinguish *Sharper Image* as not involving a "continuation of other conduct," but Manaflex has not cited a single case for the proposition that there is an exception to litigation privilege in such circumstances.  Ans. Br. at 6.  The law is actually the opposite: where, as here, "the gravamen of the complaint is a privileged communication . . . the privilege extends to necessarily related noncommunicative acts." *Grant & Eisenhofer, P.A. v. Brown*, No. CV-17-5968-PSG-PJWX, 2017 WL 6343506, at *5 (C.D. Cal. Dec. 6, 2017) (quoting *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1062 (2006)) (applying litigation privilege and rejecting argument that cause of action was based on a non-communicative act).

---

[8] Throughout this brief, emphasis in quotations is added unless otherwise indicated.

The case law has uniformly held that counterclaims of the sort alleged by Manaflex here are barred by California's litigation privilege, and the state-law counterclaims must therefore be dismissed.

**II.     Manaflex's State-Law Counterclaims Are Barred by the *Noerr-Pennington* Doctrine**

Although the fact that the California litigation privilege applies is sufficient to dispose of the state law counterclaims, those claims are additionally barred by the federal *Noerr-Pennington* doctrine, which protects communications "incidental to the prosecution of [this] suit." Op. Br. at 12-13. As CelLink's opening brief anticipated, Manaflex contends that the alleged CelLink communications are unprotected under the sham litigation and *Walker Process* exceptions to the *Noerr-Pennington* doctrine. Manaflex, as the party attempting to pierce the protection of the *Noerr-Pennington* doctrine, must overcome a "heightened pleading standard" and bears the burden of alleging "specific activities which bring the [accused party's] conduct into one of the exceptions." Ans. Br. at 7 (quoting *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991)). As explained below, Manaflex has not met that heightened pleading standard for either of the two exceptions it invokes.

    **A.     Manaflex has not met its burden to specifically plead the "sham litigation" exception.**

        **1.     Manaflex does not specifically plead that all claims are so clearly invalid as to make CelLink's case objectively baseless.**

Even assuming that Manaflex had pleaded that claim 1 was so clearly invalid as to make its assertion objectively baseless (it has not), Manaflex has not even attempted to plead—let alone with the specificity required to invoke the sham litigation exception—that claims 2-20 are rendered invalid by the two allegedly withheld references. Op. Br. at 15. That is fatal to Manaflex's objective baselessness claim. Manaflex's assertion that CelLink only asserts claim 1 is false; the Complaint alleges infringement of "one or more claims of the '070 Patent," including "at least" claim 1, Complaint ¶ 27, which is sufficient at this stage to assert all claims of the '070 Patent. *Gamevice, Inc. v. Nintendo Co.*, No. 18-CV-01942-RS, 2018 WL 5310792, at *2 (N.D. Cal. Aug. 6, 2018) (patentee need only assert infringement of "at least one exemplary

claim"); Op. Br. 15.[9] And while Manaflex avers that it made a conclusory allegation that "each of the '070 patent's claims [are] invalid as anticipated or obvious," Ans. Br. at 9, that is far from satisfying its obligation to plead objective baselessness with specificity.

### 2. Manaflex does not specifically plead that the '070 Patent is so clearly unenforceable as to make its assertion objectively baseless.

To preserve the state law counterclaims, Manaflex must show not only that its inequitable conduct counterclaim will succeed—itself a tall order—but that it is such a guaranteed success that CelLink's suit is objectively baseless. Inequitable conduct claims rarely succeed because "[t]he need to strictly enforce the burden of proof and elevated standard of proof in the inequitable conduct context is paramount because the penalty for inequitable conduct is so severe." *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008). That burden is even higher where, as here, the alleged inequitable conduct is purportedly so clear as to render the suit objectively baseless; courts "do not lightly conclude in any *Noerr-Pennington* case that the litigation in question is objectively baseless, as doing so would leave the action without the ordinary protections afforded by the First Amendment, a result [a court] would reach only with great reluctance." *White v. Lee*, 227 F.3d 1214, 1232 (9th Cir. 2000).

There is no way that Manaflex can show objective baselessness because it did not even attempt to show that the two allegedly withheld references contain material additional disclosure over that of the references that were considered by the Examiner (that is, that the allegedly withheld references were not merely cumulative to considered references). Op. Br. at 16. CelLink specifically identified one such reference that was considered by the examiner during

---

[9] Manaflex's assertion is also beside the point. Ans. Br. at 14 n.10. Because a patent plaintiff can assert the non-pleaded claims of the asserted patent as the lawsuit progresses (Manaflex does not contend otherwise), and Manaflex has not even attempted to show that these other claims of the '070 Patent are clearly invalid, Manaflex cannot claim that this ***suit*** is objectively baseless. *See Netscape Commc'ns Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 699, 729 (E.D. Va. 2010), *on reconsideration in part*, 704 F. Supp. 2d 544 (E.D. Va. 2010) (holding that even where invalidity of claim 1 is established, "this conclusion does not necessarily demonstrate objective baselessness, as questions of infringement and invalidity remain as to the [patent's other claims]").

prosecution, U.S. Pat. Pub. No. 2017/0094802 ("Coakley"). *Id.*

CelLink's opening brief specifically identified Coakley as a reference that discloses everything allegedly material in the two uncited references. Op. Br. at 16. Manaflex's opposition does not even attempt to contend otherwise. Instead, Manaflex merely points to a generic allegation that the "withheld references are more material than any of the prior art of record in the '070 patent's application's prosecution history." Ans. Br. at 12 (quoting Answer ¶ 122). But Manaflex's allegation is nothing more than a legal conclusion that would not be sufficient even under the *Iqbal*/*Twombly* standard, let alone the heightened "specificity" pleading standard. Inequitable conduct is a serious allegation—as Manaflex notes, it "is the 'atomic bomb' of patent law." *Therasense Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011). Manaflex's attempt to sweep away the protections of *Noerr-Pennington* based on the sham litigation exception is even more serious—as the Ninth Circuit has explained, "the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998). Manaflex cannot handwave away this serious problem with its inequitable conduct theory.

Manaflex's contention that Coakley is not prior art is a red herring. Ans. Br. at 12. The Examiner that reviewed Coakley would have understood that Coakley's disclosure was effectively prior art. That's because Coakley's cover page makes clear its disclosure was found, verbatim, in the prior art: The cover page notes that it is a continuation of "application No. 14/836,946, filed on Aug. 26, 2015, now Pat. No. 9,545,010," and the Examiner would have known that the fact that it is a continuation means its specification is identical to that of the '946 application. Because the two allegedly withheld references add nothing to Coakley (which the Examiner considered and the substance of which was understood to be prior art), Manaflex's inequitable conduct claim must fail. What's more, CelLink citation of Coakley is inconsistent with deceptive intent, a requirement of inequitable conduct; if CelLink intended to hide material art from the examiner, why would it have cited art that—undisputedly—has at least as strong of a disclosure as either of the allegedly withheld references? At the very least, Manaflex's

inequitable conduct claim is not so clearly meritorious as to make CelLink's suit objectively baseless.[10]

### B. Manaflex has not pled sufficient facts to allege the *Walker Process* fraud exception.[11]

In its opening brief, CelLink explained that "Manaflex's allegations regarding the alleged withholding of references are precisely the sort that have been held ***not*** to support a finding of *Walker Process* fraud." Op. Br. at 18. In support of this point, CelLink cited the Federal Circuit's decision in *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337 (Fed. Cir. 2007). *Dippin' Dots* set aside a jury's finding of *Walker Process* fraud for being insufficient a matter of law, reasoning that "while *Walker Process* intent may be inferred from the facts and circumstances of [the] case, '[a] mere failure to cite a reference to the PTO will not suffice.'" *Id.* at 1347. Manaflex's opposition, far from distinguishing *Dippin' Dots*, confirms that it forecloses the *Walker Process* fraud allegations in this case.

Manaflex's opposition makes much of CelLink's alleged knowledge of two references and the alleged materiality of those references, but *Dippin' Dots* confirms that knowledge and materiality are not themselves sufficient to state a claim for *Walker Process* fraud.[12] For

---

[10] CelLink pointed out serious deficiencies in Manaflex's inventorship-based inequitable conduct theory. Op. Br. at 16-17. Manaflex buries its response in a single footnote. Ans. Br. at 13 n.9. Manaflex's response makes clear that its "inventorship" theory is just a rewording of its theory that the DuPont reference anticipates the '070 patent (and therefore the inventors of that reference are the true inventors). It is also nonresponsive because it entirely ignores claims 2-20, the validity of which Manaflex does not plausibly challenge—let alone with the required specificity.

[11] In addition to *Walker Process* fraud's intent requirement, which is the focus of this section, Manaflex has not pled *Walker Process* fraud's materiality requirement for the reasons explained above in Section II.A.2.

[12] Manaflex's insinuation that *Dippin' Dots* is "old law" lacks merit. Ans. Br. at 9. Manaflex appears to contend that after the Federal Circuit's decision in *Therasense*, the requirements for inequitable conduct and *Walker Process* fraud are "nearly identical." *Id.* To the extent that's true, it is only because the *Therasense **increased*** the requirements for inequitable conduct in response to "an absolute plague" of inequitable conduct allegations like Manaflex's. *Therasense*, 649 F.3d at 1289. *Therasense* said nothing about the requirements for *Walker Process* fraud, and certainly did not ***decrease*** them. Manaflex's view that *Dippin' Dots* is no longer good law does

example, Manaflex alleges that CelLink knew of the two prior art references at issue. Ans. Br. at 8-9. But the patentee in *Dippin' Dots* was also found to have known about the prior art at issue—indeed, the prior art at issue was the inventor's own pre-patent-application sales. *Dippin' Dots*, 476 F.3d at 1340-41. Manaflex further alleges that the two references at issue were "highly material prior art" and "more material than any prior art of record." Ans. Br. at 8-9. But that was also true in *Dippin' Dots*; there the Court accepted a finding of "but for" materiality, i.e., that "the patent would not have issued if [the patentee] had disclosed the [prior art at issue] to the PTO." *Dippin' Dots*, 476 F.3d at 1347. What was found missing in *Dippin' Dots*—and is also missing in Manaflex's pleadings—are any allegations that "***affirmatively show***[] [the patentee's] fraudulent intent." *Id.* at 1348. Here, as in *Dippin' Dots*, "[t]hat intent cannot be shown merely from the absence of evidence." *Id.*

The case law on which Manaflex relies demonstrates the insufficiency of Manaflex's allegations. In *TransWeb*, the patentee had submitted a "dubious" letter to the Patent Office as "definitive proof" that the patentee's publicly distributed samples were not prior art, when in fact they were. *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1305 (Fed. Cir. 2016). In *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009), the patentee had submitted different translations of the same reference's abstract in two of the patentee's applications, and for the application at issue had submitted a less-specific translation that obfuscated the reference's materiality to that application's claims. And, in *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337 (Fed. Cir. 2011), the Federal Circuit actually affirmed the ***dismissal*** of the defendant's *Walker Process* antitrust claim. *Id.* at 1351. And even *Delano*'s inequitable conduct allegations (which were subject to a different standard) went far beyond what is alleged here: There, the inference of deceptive intent arose from the allegation that the inventor and his employer "discussed the fact that public uses and sales of new

---

not appear to be shared by the Federal Circuit, which has cited *Dippin' Dots* for the proposition that "a finding of inequitable conduct does not by itself support a finding of *Walker Process* fraud" even after the *TransWeb* case Manaflex relies on. *Giuliano v. SanDisk LLC*, 705 F. App'x 957, 960 (Fed. Cir. 2017).

varieties prior to seeking patent protection could jeopardize the [employer's] patenting program." *Id.* at 1350. Here, by contrast, there is no allegation that CelLink acted with deceptive intent other than the allegations of knowledge of the references and their materiality, which *Dippin' Dots* holds to be insufficient in themselves.

### III. To the Extent That Manaflex's State-Law Counterclaims Rely on CelLink's Loans, They Should Be Dismissed.

After disposing of Manaflex's state-law counterclaims premised on CelLink's alleged communications with customers (which are protected for the reasons described in Parts I and II, all that's left is Manaflex's "unlawful" prong unfair competition claim. Manaflex's opposition does not even attempt to defend it. Manaflex claims that CelLink committed "unlawful" conduct because it "likely did not disclose that its '070 Patent is invalid" when it obtained loans from the Department of Energy and others. Answer ¶ 144. But, as CelLink pointed out in its opening and Manaflex does not dispute, Manaflex has failed to identify any law broken by this alleged conduct. That defect is fatal to Manaflex's "unlawful" prong claim. Manaflex tries to deflect by arguing that it also alleges "unfair" and "fraudulent" prong UCL claims, but these claims are premised on the protected act of filing the litigation itself (with respect to the "unfair" prong) and the protected CelLink communications with customers (with respect to the "fraudulent" prong)—not on CelLink's loans. Answer ¶¶ 125-143, 145 (not mentioning "loans" once). And, even if Manaflex had alleged these other forms of unfair competition based on CelLink's loans, Manaflex's claim must fail for a lack of standing. Op. Br. at 18.

### IV. Manaflex's Opposition Confirms That the State-Law Counterclaims Should Be Dismissed with Prejudice

As CelLink's opening brief pointed out, Manaflex's state-law counterclaims "are fundamentally flawed because these communications are categorically shielded by California litigation privilege and [the] *Noerr-Pennington* doctrine. There is no additional detail Manaflex could plead to save these claims." Op. Br. at 19. Manaflex does not contend that it has ***any*** other factual basis for its claims, only that "it is likely to discover" some. Ans. Br. at 17. Even if Manaflex did, it would be of no moment. Because the "[c]ounterclaims [are] deficient not on the

basis of inadequate pleading, which could be remedied by amendment, but on the basis that they are barred by the litigation privilege" and the *Noerr-Pennington doctrine*, the Court should "decline[] to grant Defendant[] leave to amend." *TP Link United States Corp. v. Careful Shopper LLC*, No. 8:19-cv-00082-JLS-KES, 2020 U.S. Dist. LEXIS 104065, at *25 (C.D. Cal. Mar. 23, 2020) (dismissing claims with prejudice where the alleged communications were protected by litigation privilege); *Cove USA LLC v. No Bad Days Enter., Inc.*, No. 8:20-cv-02314-JLS-KES, 2021 U.S. Dist. LEXIS 154443, at *16 (C.D. Cal. July 2, 2021) (same); *Grant*, 2017 WL 6343506, at *9 (same).

## V. Conclusion

For the reasons above, CelLink's motion to dismiss should be granted.

Dated: January 24, 2024

By: */s/ Raghav Krishnapriyan*

Clement S. Roberts
Ben Au
Alyssa Caridis
Raghav Krishnapriyan
Lauren M. Kessler
Parth Sagdeo

ORRICK, HERRINGTON & SUTCLIFFE LLP

*Attorneys for Plaintiff CelLink Corp.*