UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLINK CORP., <br><br> Plaintiff, <br><br> v. <br><br> MANAFLEX LLC, <br><br> Defendant. | Case No. 23-cv-04231-HSG <br><br> **ORDER GRANTING CELLINK CORP.'S MOTION TO DISMISS STATE LAW COUNTERCLAIMS** <br><br> Re: Dkt. No. 44 |

Pending before the Court is Plaintiff and Counterclaim-Defendant CelLink Corp.'s ("CelLink") motion to dismiss counts III–V of Defendant and Counterclaimant Manaflex LLC's ("Manaflex") counterclaims. The Court found the matter appropriate for disposition without oral argument and took the matter under submission. *See* Civil L.R. 7-1(b); Dkt. No. 56. For the following reasons, the Court **GRANTS** CelLink's motion with leave to amend.

**I.     BACKGROUND**

CelLink is a company founded in 2012 to "develop large, high-conductance flexible circuits for the solar, LED, and battery industries." Dkt. No. 1 ("Compl.") ¶ 1. It currently manufactures "high-conductance, large-area flex harnesses and automotive electronic systems" in its facilities in California and Texas. *Id.* ¶ 4. CelLink is the owner of United States Patent No. 11,116,070 ("the '070 Patent"), entitled "Interconnect Circuit Methods and Devices." *Id.* ¶¶ 23–24.

On August 18, 2023, CelLink filed this case against Manaflex. In its Complaint, CelLink alleges that Manaflex was founded in August 2018 by former Tesla employee Robert Lane, who had access to CelLink's confidential and proprietary information through CelLink's discussions with Tesla in 2014–2016. *Id.* ¶¶ 5–16. CelLink's Complaint asserts two claims against

Manaflex: infringement of the '070 Patent and misappropriation of trade secrets under the Defend Trade Secrets Act. *Id.* ¶¶ 26–43.

On November 15, 2023, Manaflex answered the Complaint, and filed counterclaims alleging that CelLink and its counsel engaged in inequitable conduct during prosecution of the '070 Patent, and used the allegedly invalid '070 Patent to fraudulently obtain loans from the United States Department of Energy. *See* Dkt. No. 37 ("Answer") ¶¶ 13–102; 111–24. Manaflex further alleged that CelLink used the invalid and unenforceable '070 Patent to improperly disrupt Manaflex's business, by "disparaging Manaflex to individuals within the industry," "saying CelLink was going to come after Manaflex," filing this lawsuit in bad faith, and "sending communications to Manaflex's clients and potential clients appraising them of the lawsuit." *Id.* ¶¶ 104–06. According to Manaflex, "[i]t was CelLink's motive, plan, and desire that this lawsuit slow Manaflex's momentum and keep Manaflex from being able to fully compete with CelLink due to the distractions and costs of dealing with a lawsuit of this nature." *Id.* ¶ 107. Based on these allegations, Manaflex asserted counterclaims for (I) Invalidity of the '070 Patent; (II) Unenforceability of the '070 Patent; (III) Intentional Interference with Prospective Economic Advantage; (IV) Intentional Interference with Contractual Relations; and (V) Unfair Competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq. Id.* ¶¶ 111–47. CelLink now moves to dismiss counterclaims III–V (the "State Law Counterclaims"), on the ground that its conduct was immunized under the California litigation privilege or the *Noerr-Pennington*[1] doctrine. Dkt. No. 44 ("Mot.") at 6–18. CelLink further moves to dismiss Manaflex's UCL counterclaim, to the extent that claim is predicated on its "unlawful" conduct, for failing to state a claim upon which relief may be granted. *Id.* at 18.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be

---

[1] *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961); *Mine Workers v. Pennington,* 381 U.S. 657 (1965).

2

1  granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the
2  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."
3  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule
4  12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible
5  on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible
6  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that
7  the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
8     In reviewing the plausibility of a complaint, courts "accept factual allegations in the
9  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."
10 *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,
11 courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of
12 fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.
13 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). On a
14 motion to dismiss counterclaims, the court "applies these same standard" and "constru[es] the
15 pleadings in the light most favorable to the pleading party." *AbCellera Biologics Inc. v. Bruker
16 Cellular Analysis*, No. 20-CV-08624-JST, 2024 WL 37213, at *3 (N.D. Cal. Jan. 2, 2024) (citation
17 omitted).

**III.   DISCUSSION**

   **A.   California Litigation Privilege**

20 CelLink first argues that Manaflex's State Law Counterclaims should be dismissed
21 because these counterclaims are based on communications by CelLink that are immunized by
22 California's litigation privilege, as codified in California Civil Code § 47(b). Under Section 47(b),
23 "communications with 'some relation' to judicial proceedings [are] absolutely immune from tort
24 liability[.]" *Rubin v. Green*, 4 Cal. 4th 1187, 1193 (1993). The purpose of this privilege is to
25 "promote[] the effectiveness of judicial proceedings by encouraging open channels of
26 communication and the presentation of evidence in judicial proceedings" and "to assure utmost
27 freedom of communication between citizens and public authorities whose responsibility is to
28 investigate and remedy wrongdoing." *Silberg v. Anderson,* 50 Cal. 3d 205, 213 (1990) *as*

3

1  *modified* (Mar. 12, 1990) (quotation and citation omitted).  Accordingly, the privilege is "absolute in nature" and applies to all torts except malicious prosecution suits.  *Id.* at 215–16.  Moreover, except in such malicious prosecution suits, the privilege applies "irrespective of the maliciousness" of the communications.  *Id.* at 216.

"Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative."  *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1058, (2006) (quoting *Kimmel v. Goland*, 51 Cal. 3d 202, 211 (1990)).  A claim is deemed communicative and subject to privilege if "the injury allegedly resulted from an act that was communicative in its essential nature."  *Rusheen*, 37 Cal. 4th at 1058.  The California Supreme Court has stated a four-prong test to determine whether a communication is privileged: the communication must be "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Silberg*, 50 Cal. 3d at 212.  Thus, in order for Manaflex's counterclaims to be barred under the litigation privilege, they must be communicative in nature and satisfy all four prongs of this test.  A claim that satisfies these conditions on its face is subject to dismissal.  *See People v. Potter Handy, LLP*, 97 Cal. App. 5th 938, 947–49 (2023), *review denied* (Mar. 20, 2024) (affirming trial court's ruling sustaining demurrer where, on its face, plaintiff's UCL claim was barred by litigation privilege); *Morales v. Coop. of Am. Physicians, Inc., Mut. Prot. Tr.*, 180 F.3d 1060, 1062–64 (9th Cir. 1999) (affirming dismissal of suit as barred by litigation privilege).  "Any doubt about whether the privilege applies is resolved in favor of applying it."  *Mireskandari v. Gallagher,* 59 Cal. App. 5th 346, 366 (2020)*, as modified on denial of reh'g* (Jan. 21, 2021) (quotation omitted).

    **i.   Communicative Conduct**

Manaflex first argues that its counterclaims rely "at least in part (and indeed, significantly) on conduct (not communications)—such as CelLink's fraudulent procurement and obtaining loans using misrepresentations of its intellectual property," and contends that "conduct is not covered by the privilege."  Dkt. No. 52 ("Opp.") at 3–4.  The Court agrees that CelLink's alleged fraudulent

4

1    procurement of loans relating to the '070 Patent is not communicative such that the California
2    litigation privilege would apply. However, such conduct only forms the gravamen of Manaflex's
3    "unlawful" prong UCL claim. *See* Answer ¶ 144. Manaflex's intentional interference claims
4    relate to, and arise from CelLink's alleged "false and misleading representations" to Manaflex's
5    clients and potential clients regarding this litigation or CelLink's intellectual property. *See id*.
6    ¶¶ 128, 137. As to its UCL counterclaim, Manaflex alleges that CelLink engaged in "unfair"
7    conduct by filing a lawsuit based on the allegedly invalid '070 Patent, and "fraudulent" conduct by
8    "caus[ing] false and disparaging allegations to be published and republished to Manaflex's
9    existing customers." *Id.* ¶¶ 143, 145. All of these claims undoubtedly are based on
10   communicative acts, including the filing of this litigation. *See Navellier v. Sletten*, 106 Cal. App.
11   4th 763, 770 (2006) ("Pleadings and process in a case are generally viewed as privileged
12   communications"). Accordingly, the Court finds that, with the exception of the "unlawful" prong
13   of Manaflex's UCL counterclaim, the State Law Counterclaims rely upon "communications" such
14   that the litigation privilege applies if all four prongs of the test are satisfied.

15           **ii.     Prong One: Made in Judicial or Quasi-Judicial Proceedings**
16           The first prong of the four-part litigation privilege test requires that the communications in
17   question be made in "judicial or quasi-judicial proceedings." However, this requirement has been
18   interpreted broadly, and "does not limit the litigation privilege to statements made at trial or to
19   evidence offered in open court." *Scalzo v. Baker*, 185 Cal. App. 4th 91, 100 (2010). "Rather, the
20   privilege 'applies to any publication required or permitted by law in the course of a judicial
21   proceeding to achieve the objects of the litigation, even though the publication is made outside the
22   courtroom and no function of the court or its officers is involved.'" *Id.* (quoting *Silberg*, 50 Cal.
23   3d at 212).
24           As an initial matter, Manaflex does not (and cannot) dispute that CelLink's filing and
25   prosecution of this lawsuit satisfies this prong. That conduct forms the gravamen of Manaflex's
26   "unfair" prong UCL claim. Therefore, the Court finds that Manaflex's "unfair" prong UCL claim
27   satisfies the first prong of the litigation privilege test.
28           As to its other counterclaims, Manaflex argues CelLink's communications were not "made

in judicial or quasi-judicial proceedings," because (1) they were republications to nonparticipants in the litigation; (2) they were made prior to the commencement of the litigation; and (3) they are evidence of an overall pattern and practice of unlawfully procuring patent rights and creating a monopoly. Opp. at 4. The Court finds these arguments unpersuasive. First, while it is true that "republications to nonparticipants in the action are generally not privileged[,]" *Silberg*, 50 Cal. 3d at 219, "non-litigants possessing a 'substantial interest in the outcome of the litigation' are 'authorized participants' for purposes of the litigation privilege." *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056, 1077 (N.D. Cal. 2006) (citing *Costa v. Superior Court*, 157 Cal. App. 3d 673, 678 (1984)); *see also Ingrid & Isabel, LLC v. Baby Be Mine, LLC,* 70 F. Supp. 3d 1105, 1141 (N.D. Cal. 2014). A third party that purchases a product that is the subject of an infringement suit "clearly has an interest in the litigation" because "the third party's supply of the product may be interrupted if the action is successful." *Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C.,* No. 06-CV-4693-JCS, 2007 WL 1394427, at *11 (N.D. Cal. May 10, 2007). And numerous courts have extended the privilege to *potential* customers of an accused infringer. *See, e.g.*, *MultiCraft Imports, Inc. v. Mariposa USA, Inc.,* No. 16-CV-3975-DMG-AJWx, 2017 WL 3579697, at *4 (C.D. Cal. June 8, 2017)*; Sliding Door Co. v. KLS Doors, LLC,* No. 13-CV-0196-JGB, 2013 WL 2090298, at *8 (C.D. Cal. May 1, 2013).

Second, Manaflex's argument that the litigation privilege does not extend to pre-suit communications is not supported by case law. Courts have found that pre-suit communications may be covered by the privilege if, at the time, the party making the communication was seriously and in good faith contemplating litigation. *See Eisenburg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1380 (1999) (stating that pre-suit communications would satisfy prong one upon a finding of "actual good faith contemplation of an imminent, impending resort to the judicial system for the purpose of resolving a dispute"); *Reid-Ashman,* 2007 WL 1394427, at *11 (same); *Sharper Image*, 425 F. Supp. 2d at 1078 (same). To be clear, these courts have stated that whether a party making such pre-suit communications did so in serious, good faith contemplation of an imminent litigation is a "question of fact that must be determined before the privileged is applied." *Eisenburg*, 74 Cal. App. 4th at 1380 (quotation omitted); *see also Reid-Ashman*, 2007 WL

1394427, at *11. But here, such facts are evident from the face of the pleadings: Manaflex's only allegation regarding pre-suit communications is that "[i]n or around the Summer of 2023, CelLink's salesforce began disparaging Manaflex to individuals within the industry and saying that CelLink was going to come after Manaflex" and that almost immediately thereafter, "CelLink made good on those threats" by actually filing this lawsuit in August 2023. Answer ¶¶ 104–105. Thus, from Manaflex's own allegations, it is clear that this is not a case in which a plaintiff merely *threatened* a lawsuit as a means of inducing settlement: instead, CelLink's pre-suit comments were made imminently before, and expressly in connection with, this lawsuit that it was seriously contemplating at the time.[2] *See Fin. Corp. of Am. v. Wilburn*, 189 Cal. App. 3d 764, 777–78 (1987) (agreeing with trial court that complaint's allegations of prelitigation statements made to plaintiffs' "present and former employees, depositors, investors, and customers" were barred by litigation privilege and subject to demurrer, because the complaint failed to allege facts supporting an inference that defendant did not seriously and in good faith contemplate legal proceedings while making those statements).[3]

Finally, the Court is unconvinced by Manaflex's argument that CelLink's communications were made as part of "an overall pattern and practice of unlawfully procuring patent rights and creating a monopoly." Opp. at 4 (citing *Bylin Heating Sys., Inc. v. M & M Gutters, LLC,* No. 07-CV-00505-FCD-KJM, 2008 WL 744706, at *6 (E.D. Cal. Mar. 18, 2008)). In *Bylin*, the court declined to apply the litigation privilege where the defendant alleged that the plaintiff "ha[d] a history of asserting bad faith threats of infringement litigation against its competitors in order to intentionally monopolize the industry and to lessen competition in the relevant market." *Bylin*,

---

[2] *See Neville v. Chudacoff*, 160 Cal. App. 4th 1255, 1269 (2008) (finding letter sent four months prior to actual filing of lawsuit to constitute an "imminent" threat of litigation).
[3] The Counterclaims allege that CelLink's underlying substantive infringement claims "are objectively baseless and asserted in subjective bad faith." Answer ¶ 105. But the caselaw makes clear that the relevant issue with respect to the privilege inquiry is not the purported substantive merits of the claim, but rather whether the party making the statement seriously and in good faith contemplated *pursuing* a lawsuit at the time it made the statement. *See Aronson v. Kinsella*, 58 Cal. App. 4th 254, 312–313 (1997) (explaining that the good faith, serious consideration of litigation test "seeks to prevent application of the privilege when the statements are made at a time when the possibility of litigation is not seriously considered."). So Manaflex's general "subjective bad faith" allegation does not preclude dismissal given the facts pled.

7

2008 WL 744706, at *5 (E.D. Cal. Mar. 18, 2008). Relying on these allegations, the *Bylin* court declined to dismiss the defendant's counterclaims "to the extent [they] [were] based upon a pattern of tortious and anti-competitive conduct, merely evidenced in part by the communication asserted in the complaint[.]" *Id.* at *6. This Court does not read *Bylin* as setting forth a legal exception to the litigation privilege, but rather as applying the well-established and noncontroversial rule that the litigation privilege does not apply to non-communicative conduct. The *Bylin* court's reasoning was that because the defendant had alleged that the plaintiff had engaged in a pattern of non-communicative anticompetitive conduct, which was simply *evidenced* by communications, the litigation privilege did not bar claims to the extent they were based upon that non-communicative conduct. That reasoning is plainly inapplicable here, as the Court has already found that, with one exception, Manaflex's State Law Counterclaims are based on communicative conduct. *See* Section II(A)(i), *supra*. Those counterclaims therefore satisfy the first prong of the litigation privilege test.

### iii. Prong Two: Made by Litigants or Other Participants Authorized by Law

Manaflex does not dispute that its counterclaims, to the extent they rely on CelLink's communications, satisfy the second prong of the California litigation privilege test.

### iv. Prongs Three & Four: Made to Achieve the Objects of the Litigation and Having Some Connection or Logical Relation to the Action

The California Supreme Court has stated that "[t]he requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, *i.e.*, that it not be extraneous to the action." *Silberg*, 50 Cal. 3d at 219–20. Therefore, "[i]t follows that the 'connection or logical relation' which a communication must bear to litigation in order for the privilege to apply, is a *functional* connection." *Rothman v. Jackson*, 49 Cal. App. 4th 1134, 1146 (1996) (emphasis original). Accordingly, if a communication satisfies the third prong—that it was made in furtherance of the objects of the litigation—it would also satisfy the fourth prong—that it had some connection or logical relation to the litigation. *Id.* This requirement is not a "a test of a participant's motives, morals, ethics or intent." *Silberg*, 50 Cal. 3d at 220. Rather, "the test can be

1    satisfied only by communications which function intrinsically, and apart from any consideration of
2    the speaker's intent, to advance a litigant's case." *Rothman*, 49 Cal. App. 4th at 1148.

3          The Court finds that CelLink's pre-litigation and post-litigation communications to
4    CelLink's clients and potential clients satisfy these prongs of the test. As alleged in the
5    counterclaims, CelLink's communications related exclusively to the filing of this litigation. *See*
6    Answer ¶¶ 104 (alleging that CelLink said it was "going to come after Manaflex"); 106 ("After the
7    filing of the lawsuit, CelLink hastily began sending communications to Manaflex's clients and
8    potential clients appraising them of the lawsuit."). Courts considering similar communications
9    have found them in furtherance of the objects of the litigation. For example, in *Tri-Star Elecs.*
10   *Int'l, Inc. v. Preci-Dip Durtal SA*, the court held that letters to the defendant's customers and
11   distributors appraising them of the patent infringement lawsuit were "certainly not 'extraneous' to
12   [the] action, and [were] a necessary and useful step in the litigation process because [they]
13   pertain[ed] directly to the subject matter of [the] lawsuit and serve[d] to deter the continued
14   infringement of the [asserted patent]." No. 08-CV-04226-GAF-AJWx, 2011 WL 13176071, at *8
15   (C.D. Cal. May 27, 2011). Like in *Tri-Star*, CelLink's communications in this case related
16   directly to the subject matter of this lawsuit (and even directly to the filing of the lawsuit) and
17   served to advance its interest in this litigation in minimizing or preventing infringement of its
18   intellectual property. *See Rothman*, 49 Cal. App. 4th at 1147–48 ("A party's legitimate objectives
19   in the litigation are limited to the remedies which can be awarded by courts[,]" such as monetary
20   or equitable relief. (emphasis omitted)).

21         Other courts have overwhelmingly and almost exclusively agreed in their rulings. *See*
22   *Youngevity Int'l Corp. v. Andreoli,* 749 F. App'x 634, 635 (9th Cir. 2019) (reversing district
23   court's decision not to strike counterclaims based on plaintiff's republication of its verified
24   complaint because those communications were protected by the litigation privilege)*; Epistar*
25   *Corp. v. Philips Lumileds Lighting Co., LLC,* No. 07-CV-5194-CW, 2008 WL 3930030, at *6–7
26   (N.D. Cal. Aug. 26, 2008) (granting judgment on the pleadings under Rule 12(c) and finding
27   defendant's letters to plaintiff's customers regarding ongoing ITC litigation satisfied third and
28   fourth prongs of litigation privilege test); *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, 612 F.

1  Supp. 3d 1131, 1141–42 (S.D. Cal. 2020) (finding that letters to infringer's customers satisfied

2  third and fourth prongs of litigation privilege test); *Ingrid & Isabel*, 70 F. Supp. 3d at 1141–42

3  (same); *Sliding Door*, 2013 WL 2090298, at *7–8 (same); *Fitbit, Inc. v. Laguna 2, LLC*, No. 17-

4  CV-00079-EMC, 2018 WL 306724, at *7 (N.D. Cal. Jan. 5, 2018) (dismissing counterclaims as

5  barred by litigation privilege and finding plaintiffs' act of writing to seller of allegedly stolen

6  goods was in furtherance of its right to petition); *Reid-Ashman*, 2007 WL 1394427, at *11

7  (applying litigation privilege to letters to third party suppliers).

8        CelLink urges the Court to decline to follow all of these cases, and instead follow *Meridien*

9  *Project Sys. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1223 (E.D. Cal. 2005). *See* Opp. at 6.

10 The Court declines to do so. In *Meridien*, the court found that the litigation privilege did not

11 apply, crediting the defendant's allegations that the plaintiff met with its customers "not [in] a

12 good faith effort to forestall litigation, but merely [in] an effort to discourage the customers from

13 purchasing [defendant's] product." *Id.* at 1223. Without any further analysis, the *Meridien* court

14 summarily concluded that "[s]uch anti-competitive conduct would not be privileged under [Cal.

15 Civ. Code] § 47(b)." *Id.* This Court finds persuasive the reasoning of the cases articulating the

16 overwhelming majority view, and respectfully disagrees with *Meridien*. And in any event, the

17 defendant in *Meridien* alleged that the communications in question were not related to the

18 litigation at issue; here, Manaflex has done the opposite—all the communications it alleges

19 CelLink made relate directly to the filing of this lawsuit. *See* Answer ¶¶ 104, 106. The Court

20 finds those allegations further distinguish this case from *Meridien*.

21       **v.**    **California Litigation Privilege Conclusion**

22       Accordingly, the Court finds that, as alleged in the counterclaims, CelLink's pre-litigation

23 and post-litigation communications with Manaflex's clients and potential clients satisfy all four

24 prongs of the litigation privilege test. Because Manaflex's claims for intentional interference with

25 prospective economic advantage, intentional interference with contractual relations, "unfair"

26 conduct under the UCL, and "fraudulent" conduct under the UCL all exclusively arise from and

27 rely upon these communications, the Court dismisses these claims as barred under the California

28 litigation privilege.

10

### B. UCL "Unlawful" Prong

Manaflex's sole remaining claim arises under the "unlawful" prong of the UCL. CelLink moves to dismiss this claim on the ground that Manaflex did not adequately plead "what legal duty CelLink purportedly violated when it did not disclose that one claim of its dozens of patents is (allegedly) invalid" or "plausibly allege how Manaflex has standing to bring a claim relating to alleged unlawful conduct toward third-party lenders." Mot. at 18. Manaflex does not dispute that its counterclaim fails to allege which law CelLink allegedly violated, and instead only argues that dismissal is inappropriate as to the "unfair" and "fraudulent" prongs of its UCL claim. *See* Opp. at 16.

"Each of the three UCL prongs provides a 'separate and distinct theory of liability' and an independent basis for relief." *Cappello v. Walmart Inc*., 394 F. Supp. 3d 1015, 1018 (N.D. Cal. 2019) (citing *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010)). The "unlawful" prong of the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation and quotation omitted). Because Manaflex has failed to allege a violation of another law, it has failed to adequately plead a claim for relief under the "unlawful" prong of the UCL. Accordingly, the Court also dismisses this claim.

### C. Leave to Amend

CelLink argues that Manaflex's State Law Counterclaims should be dismissed with prejudice. The Federal Rules of Civil Procedure favor liberal amendment, and state that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "Whether to grant leave to amend is within the discretion of the district court, which may deny leave to amend "due to 'undue delay, bad faith or dilatory motive on the part of the [party seeking leave to amend], repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)). While this case presents a somewhat unique circumstance in which Manaflex has directly pled allegations that fall squarely within the scope of the litigation privilege,

11

the Court cannot say at this stage that amendment necessarily would be futile. Accordingly, the Court grants Manaflex leave to amend.

## IV.   CONCLUSION

The Court **GRANTS** CelLink's motion to dismiss Manaflex's counterclaims III–V, with leave to amend.[4] Any amended complaint must be filed within 21 days of this Order, and Manaflex may not add any new counterclaims or parties without advance leave of the Court.

**IT IS SO ORDERED.**

Dated: May 28, 2024

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[4] Because the Court dismisses the State Law Counterclaims on other grounds, it need not reach the parties' arguments regarding the *Noerr-Pennington* doctrine.