BOIES, SCHILLER & FLEXNER LLP
Alison L. Anderson (SBN 275334)
Joshua Y. Quaye (SBN 325480)
2029 Century Park East, Suite 1520
Los Angeles, CA 90067
(213) 995-5720
alanderson@bsfllp.com
jquaye@bsfllp.com

Eric J. Maurer (*pro hac vice*)
1401 New York Ave., NW
Washington, DC 20005
(202) 237-2727
emaurer@bsfllp.com

Beko Reblitz-Richardson (SBN 238027)
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
brichardson@bsfllp.com

*Attorneys for Defendant Manaflex LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| CELLINK CORP.,<br><br>    Plaintiff,<br><br>    v.<br><br>MANAFLEX LLC,<br><br>    Defendant. | Case No. 4:23-cv-04231-HSG<br><br>**MANAFLEX'S OPPOSITION TO CELLINK'S MOTION TO DISMISS MANAFLEX'S UNFAIR COMPETITION COUNTERCLAIMS**<br><br>Date:   August 29, 2024<br>Time:  2:00 p.m.<br>Ctrm:  Courtroom 2—4th Floor<br>Judge: Hon. Haywood S. Gilliam, Jr. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................... 1

LEGAL BACKGROUND ........................................................................................................ 2

ARGUMENT ........................................................................................................................... 2

I.   Unlawful Conduct is not Protected by the California Litigation Privilege .............................. 2

II.  The Amended Counterclaims Further Support the Allegations that CelLink Has
     Engaged in Unlawful Business Practices. ......................................................................... 3

     A.  CelLink Fraudulently Obtained the '070 Patent .................................................... 3

     B.  CelLink Filed Within Weeks of CelLink's Outside Counsel Learning that
         Manaflex was to Receive a $10-$12 million Investment. ..................................... 4

III. Even if the California Litigation Privilege Applies, Manaflex's "Unlawful"-Prong
     UCL Claim is Sufficiently Pled Because CelLink's Actions to Fraudulently Obtain
     the '070 Patent and Engage in Unfair Competition are Non-Communicative Actions
     that Fall Outsde of the Privilege. ...................................................................................... 5

IV.  Manaflex Has Pled an "Unlawful" Prong Based UCL Claim .............................................. 7

     A.  15 U.S.C. § 2. ...................................................................................................... 8

     B.  Cal. Bus. & Prof. Code § 16720, California's Cartwright Act. ............................ 9

     C.  18 U.S.C. § 371. .................................................................................................. 9

     D.  18 U.S.C. § 1001 and 37 C.F.R. 1.56. .............................................................. 10

CONCLUSION ..................................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                   <u>Page(s)</u>

*Abbot Laboratories v. Brennan,*
  952 F.2d 1346 (Fed. Cir. 1991)....................................................................................8

*Action Apartment Ass'n, Inc. v. City of Santa Monica,*
  41 Cal.4th 1232 (2007) ...............................................................................................2

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)....................................................................................................2

*Chabner v. United of Omaha Life Ins. Co.,*
  225 F.3d 1042 (9th Cir. 2000).....................................................................................8

*Gardner v. Starkist Co.,*
  418 F. Supp. 3d 443 (N.D. Cal. 2019) ........................................................................9

*Holmes v. Elec. Document Processing, Inc.,*
  966 F. Supp. 2d 925 (N.D. Cal. 2013) ........................................................................2

*In re Netflix Antitrust Litig.,*
  506 F. Supp. 2d 308 (N.D. Cal. 2007) ......................................................................10

*In re Outlaw Lab'y, LLP,*
  463 F. Supp. 3d 1068 (S.D. Cal. 2020) .......................................................................8

*Komarova v. National Credit Acceptance, Inc.,*
  175 Cal.App.4th 324 (2009) ........................................................................................2

*Lee v. City of L.A.,*
  250 F.3d 668 (9th Cir. 2001).......................................................................................9

*Matthews v. Nat'l Football League Mgmt. Council,*
  688 F.3d 1107 (9th Cir. 2012).....................................................................................9

*Mujica v. AirScan Inc.,*
  771 F.3d 580 (9th Cir. 2014).......................................................................................2

*Produce Pay, Inc. v. Izguerra Produce, Inc.,*
  39 F.4th 1158 (9th Cir. 2022)......................................................................................2

*Silberg v. Anderson,*
  50 Cal.3d 205 (1990)...................................................................................................5

*Smith v. State Farm Mut. Auto. Ins. Co.,*
  93 Cal. App. 4th 700 (2001) ........................................................................................8

*Ticconi v. Blue Shield of Cal. Life & Health Ins.*,
   160 Cal. App. 4th 528 (2008)..................................................................................8

*Walker v. Fred Meyer, Inc.*,
   953 F.3d 1082 (9th Cir. 2020).................................................................................2

*Walker, Inc. v. Food Machinery*,
   382 U.S. 172 (1965)..................................................................................................8

### Statutes

15 U.S.C. § 2 ....................................................................................................................8

18 U.S.C. § 371 ..............................................................................................................10

18 U.S.C. § 1001 ............................................................................................................10

Cal. Bus. & Prof. Code § 16720 ......................................................................................9

Cal. Bus. & Prof. Code § 17200 ......................................................................................7

### Rules

Fed. R. Evid. 201(b)(2)....................................................................................................9

### Regulations

37 C.F.R. 1.56..................................................................................................................10

## **INTRODUCTION**

CelLink seeks to waive aside Manaflex's amended Unfair Competition Law counterclaim (the "UCL claim") by asserting that "[a]ll that is new is some procedural history and some alleged interactions between CelLink's outside counsel and a private equity firm," that, according to Cellink, do not relate to the counterclaims.  ECF 74 at 2.  But that "procedural history" helps show that (a) CelLink's patent litigation is merely a sham (and should be treated as conduct); and (b) CelLink's litigation is part of a larger pattern of conduct that gives rise to the claim.  Before filing the lawsuit, CelLink's outside counsel offered to represent a private equity firm looking to invest $10 million in another company; outside counsel learned that company was Manaflex; and a few weeks later CelLink's outside counsel rushed to file a bare bones complaint based upon a patent infringement claim they now seek to withdraw.  (Amended Counterclaim ("ACC") ¶¶ 105-111.)  Then after Manaflex filed a detailed counterclaim—which explained how CelLink knew its '070 patent was obtained fraudulently[1]—CelLink informed this Court that it intends to voluntarily withdraw its patent infringement claim on the '070 patent in this case.  (ACC ¶ 105 (citing ECF No. 48).[2]

These facts go directly to CelLink's "unlawful" business practices serving to support Manaflex's "unlawful"-prong UCL claim.  With respect to the "unlawful" aspect of the counterclaim—which the Court did not previously dismiss based on the California litigation privilege, (ECF 70 at 11)—Manaflex has now identified the laws that CelLink has violated.  Thus, Manaflex's amended UCL counterclaim adequately pleads a violation of one or more of those laws, and CelLink's motion should be denied.

---

[1] CelLink does not challenge Count II of Manaflex's counterclaims, which relate to this fraud.  Those allegations must be accepted as true for purposes of assessing CelLink's motion to dismiss.

[2] CelLink has represented to Manaflex and this Court that it intends to do so following Manaflex's original Answer which laid out the facts that show that CelLink and its CEO fraudulently obtained the '070 patent.  As a result, the parties' proposed schedule did not include provisions for events that should have already occurred: such as CelLink's preliminary infringement contentions.  Mysteriously, CelLink does not address its plan to withdraw its patent infringement claim in its motion, leaving Manaflex and the Court to wonder whether it is now reconsidering withdrawing the patent infringement claim, planning to do so once the Court decides on the instant motion, or simply hoping the Court does not notice.

1

**LEGAL BACKGROUND**

2

Dismissal under Rule 12(b)(6) "is improper" where the counterclaim "alleges 'enough facts

3

to state a claim to relief that is plausible on its face.'" *Produce Pay, Inc. v. Izguerra Produce, Inc.*,

4

39 F.4th 1158, 1161 (9th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

5

In analyzing the motion to dismiss, the court must "'accept all well-pleaded factual allegations' "as

6

true and construe the pleadings in the light most favorable'" to the nonmovant. *Id.* (quoting *Walker*

7

*v. Fred Meyer, Inc.*, 953 F.3d 1082, 1086 (9th Cir. 2020)).  The Court must also "draw all reasonable

8

inferences in favor of the nonmoving party." *Mujica v. AirScan Inc.*, 771 F.3d 580, 589 (9th Cir.

9

2014).

10

**ARGUMENT**[3]

11

**I.      Unlawful Conduct is not Protected by the California Litigation Privilege.**

12

As the Court acknowledged in its previous order on CelLink's motion to dismiss, unlawful

13

conduct is not protected by the California litigation privilege.  ECF 70 at 5 ("the Court finds that,

14

with the exception of the 'unlawful' prong of Manaflex's UCL counterclaim, the State Law

15

Counterclaims rely upon 'communications' such that the litigation privilege applies if all four prongs

16

of the test are satisfied").  Courts have recognized exceptions to the California privilege under

17

statutes that: "(1) are 'more specific' than the privilege, and (2) would be 'significantly or wholly

18

inoperable' if the privilege applied." *Komarova v. National Credit Acceptance, Inc*., 175 Cal.App.4th

19

324, 337 (2009) (quoting *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232,

20

1246 (2007)).  By way of example, communications that served as the basis for UCL claims that

21

allege *unlawful* actions were not protected by the California litigation privilege.  *See, e.g.*, *Holmes v.*

22

*Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 937 (N.D. Cal. 2013) (declining to dismiss

23

Plaintiff's UCL and RFDCPA claims based on the California litigation privilege).  Thus, if Manaflex

24

has sufficiently pled UCL claims under the "unlawful" prong, this claim falls within the exception to

25

the California litigation privilege as conduct that is violative of other state and federal laws.

26

27

28

---

[3] Manaflex will address the new arguments raised by CelLink while attempting not to re-tread old ground.  Thus, Manaflex cites to and incorporates its arguments contained in its response to CelLink's first motion to dismiss.  *See* ECF 52.

## II.     The Amended Counterclaims Further Support the Allegations that CelLink Has Engaged in Unlawful Business Practices.

The additional allegations further support that CelLink engaged in the unlawful business practices that Manaflex has specifically alleged are predicates to its amended UCL claim.

### A.     CelLink Fraudulently Obtained the '070 Patent.

Manaflex pled these allegations with specificity, explaining who at CelLink committed the fraud, how the persons committed it, what they knew, and when the fraud occurred.  Manaflex pled that CelLink's CEO/inventor and patent counsel were intimately familiar with two prior art references that they knew disclosed the very features that the PTO believed were missing from the prior art and that the PTO relied on to issue the asserted patent; and they knew that those prior references invalidated the patent. For example:

- Just a few years before filing the application for the patent-in-suit, CelLink's CEO (who is the named inventor on the asserted patent) and its patent prosecution counsel attempted to obtain a claim in a prior patent application ("prior art application") that is very similar to the sole asserted claim (claim 1) in the '070 patent (the asserted patent in this suit).  (ECF 73 at ¶¶ 37-47.)

- CelLink's CEO (the named inventor) and its patent counsel withdrew that claim from consideration in order to bring the prior art application into compliance with PTO formalities. (*Id.* ¶ 50.)

- CelLink's CEO swore under oath that he understood the contents of that prior claim as well as the remaining contents of that earlier prior art application.  (*Id.* ¶¶ 48-49.)

- During the application process for that same prior art application, CelLink's CEO and its patent counsel became aware of a prior art reference to DuPont—because the PTO cited to it, including its use of a laminated metal foil as a conductive layer.  (*Id.* ¶¶ 24-36.)

- Later, in 2017, CelLink's CEO and its patent counsel filed the provisional application for the asserted '070 patent; claim 1 of the asserted patent is extremely similar to the withdrawn claim in the prior art application discussed above.  (*Id.* ¶¶ 6, 38-45.)

- Both the DuPont prior art reference and CelLink's prior art application disclose the very feature that the later-in-time asserted '070 patent represents is its innovation (patterning a conductive layer on a temporary substrate).  (*Id.* ¶¶19-36, 53-54.)  Therefore, CelLink's CEO (a named inventor) and its prosecution counsel understood that representation was false.  (*Id.* ¶ 24.)

- Both the DuPont prior art reference and CelLink's prior art application disclose the very features that the PTO believed was missing from the prior art, including a feature CelLink added to the claims in order to secure their allowance—features that CelLink's CEO and its patent prosecution counsel knew were actually in that prior art.  (*Id.* ¶¶ 52-85, 124-125.)

- CelLink's CEO and its patent prosecution knew the contents of these prior art references, they knew the references were highly material prior art (as they disclosed the features the

-3-

PTO relied on to issue the asserted patent), and they knew they had a duty to disclose them—yet they failed to disclose them to the PTO.  (*Id.* ¶¶ 3, 48-49, 52-54, 83-85, 124-129.)

- In addition to the prior art references disclosing the very features the PTO found were missing from the cited prior art, the references render "each of the '070 patent's claims invalid as anticipated or obvious."  (*Id.* ¶¶ 82, 96; *see also id.* ¶¶86-96.)

- The asserted '070 patent would not have issued if CelLink had cited either of the prior art references, which are more material than any prior art of record in the asserted patent's prosecution history.  (*Id.* ¶¶ 4, 97.)

- In light of these and several other pled facts, CelLink's CEO (a named inventor) and its patent prosecution counsel intended to deceive the PTO by withholding the prior art references from the PTO—it is "the single reasonable inference that can be drawn from the evidence."  (*Id.* ¶¶ 130, 132.)

**B.      CelLink Filed Within Weeks of CelLink's Outside Counsel Learning that Manaflex was to Receive a $10-$12 Million Investment.**

The new allegations that CelLink filed its lawsuit only weeks after its Outside Counsel learned that Manaflex was to receive a $10-$12 million lead Series A Investment supports Manaflex's allegations of "unlawful" business practices.  Manaflex alleges as follows:

- An investor, "Private Equity Firm" was interested in investing in Manaflex as it was excited about Manaflex's product.  In order to complete its prospective investment in Manaflex, Private Equity Firm sought to potentially engage legal counsel to assist in its closing of the transaction. Private Equity Firm approached one law firm in particular, CelLink's Outside Counsel. (ECF 73 at ¶ 105-106.)

- On or about July 18, 2023, Private Equity Firm provided certain confidential information to CelLink's Outside Counsel as part of the consultation process where Private Equity Firm was seeking to retain counsel to do due diligence on an investment deal. That confidential information included that Private Equity Firm was planning to lead a Series A investment round for a company in the electronic vehicle battery technology industry.  Private Equity Firm also disclosed that its intended initial investment would be $10,000,000 to $12,000,000 and that the transaction would be set to close in September 2023. (ECF 73 at ¶ 107.)

- CelLink's Outside Counsel sought the name of the target company, in which Private Equity Firm sought to invest in. On or about July 20, 2023, Private Equity Firm disclosed that the target company was Manaflex LLC. (ECF 73 at ¶ 108.)

- On or about July 25, 2023, Private Equity Firm declined the terms of Outside Counsel's proposed retention and ended its retention inquiry. (ECF 73 at ¶ 109.)

- On August 2, 2023, Private Equity Firm and Manaflex entered into a fully executed Series A Preferred Stock Financing Term Sheet. (ECF 73 at ¶ 110.)

- On August 18, 2023, CelLink, through CelLink's Outside Counsel, rushed to file this

-4-

lawsuit against Manaflex alleging that Manaflex has infringed on a patent that CelLink, and its CEO, knew to be invalid—the '070 Patent. CelLink simultaneously alleged that Manaflex "misappropriated" CelLink's "trade secrets" without identifying—even at a high-level—what the "trade secrets" are, how they differ from CelLink's patent, or explain how Manaflex has "misappropriated" these "trade secrets." Instead, CelLink's Complaint lacked any detail to CelLink's allegations and was primarily based on CelLink's known invalid '070 Patent. (ECF 73 at ¶ 111.)

Then, immediately after Manaflex filed detailed counterclaims explaining why the patent is invalid and was fraudulently obtained, CelLink told this Court that it intended to voluntarily withdraw the patent. ECF 48 at 3 ("CelLink intends to streamline the litigation by seeking Manaflex's leave to amend its complaint to remove the claim for patent infringement and proceeding on the trade secret misappropriation claim.")

### III. Even if the California Litigation Privilege Applies, Manaflex's "Unlawful"-Prong UCL Claim is Sufficiently Pled Because CelLink's Actions to Fraudulently Obtain the '070 Patent and Engage in Unfair Competition are Non-Communicative Actions that Fall Outside of the Privilege.

Manaflex's amended state-law claim, the "unlawful"-prong UCL claim, relies at least in part (and indeed, significantly) on conduct (not communications)—such as, CelLink's fraudulently obtaining its '070 patent, fraudulently obtaining loans using misrepresentations of its intellectual property, and fraudulently enforcing its '070 patent. Conduct is not covered by the privilege. *See Silberg*, 50 Cal.3d at 217-18. Relatedly, the state-law claim is based *almost entirely* on *out-of-court conduct*, not litigation related communications "made in judicial or quasi-judicial proceedings." Indeed, Manaflex has alleged the following conduct that is non-communicative, non-privilege-protected conduct even if the Court determines CelLink's claims are not sham litigation:

- CelLink fraudulently obtained the asserted patent ('070 patent) from the PTO by, *inter alia*, withholding key prior art with an intent to deceive. (ECF 73 at p. 2 and at p. 11 ¶¶ 2-3, 123, 130, 132.)

- But for CelLink's fraud, the patent would not have issued.  (ECF 73 ¶¶ 97, 126, 131.)

- Instead of competing fairly in the marketplace, CelLink obtained funding by misrepresenting its intellectual property, by disparaging Manaflex, and by filing suit and subsequently harassing Manaflex's clients and potential clients—all to impede Manaflex from competing, even though CelLink knew its patent is invalid.  (ECF 73 ¶¶ 98-104, 120, 122, 125, 126.)

- In 2022, CelLink—relying upon its fraudulently obtained patents—closed its Series D round by raising at least $250,000,000 from private investors.  There is no reason to believe,

CelLink's private investor disclosures where any more forthcoming than the omissions and limited disclosures it made to the federal government. Through misrepresentation and deception, CelLink secured hundreds of millions of private investment dollars.  (ECF 73 ¶ 99.)

- In 2023, CelLink continued its pattern of misrepresentation and deception by failing to disclose the fraud it relied upon to procure its patents when it identified its intellectual property to the Department of Energy as part of a highly selective loan application process. Using misrepresentation and omission, CelLink was awarded a $362 million loan. (ECF 73 ¶¶ 100-102.)

- CelLink initiated a campaign calculated to devalue Manaflex and to discourage third-party investment in Manaflex. Specifically, one Private Equity Firm cancelled its firm commitment to invest millions in Manaflex as a result of CelLink's harm. The entirety of the Manaflex private equity transaction was disclosed to CelLink's Outside Counsel; shortly thereafter the Private Equity Firm cancelled its multi-million dollar commitment.  (ECF 73 ¶¶ 105-110, 112.)

Manaflex's counterclaims pled over a hundred paragraphs in support of these allegations, including that—for years—CelLink's CEO and its patent counsel knew that the very alleged "groundbreaking" concepts supposedly included in the asserted patent were, in fact, in the public domain well before CelLink applied for the patent.  Nevertheless, they ignored their duty to disclose that information to the PTO.  They then improperly used that patent monopoly in an attempt to gain a competitive advantage:  including to obtain money; and in communications with Manaflex's customers.  (ECF 37 ¶¶ 98-108.)  That CelLink then used the fraudulently obtained patent to receive fraudulently receive hundreds of millions of dollars from its investors and the United States Department of Energy to unlawfully compete with Manaflex.  (ECF 73 ¶¶ 100-102.)  Then, when, as CelLink readily admits, it found out it was losing a large customer to Manaflex, ECF 74 at 5, it began telling prospective and current Manaflex customers that CelLink was going to "come after Manaflex."  (ECF 73 ¶ 104.)  When CelLink's Outside Counsel learned that Manaflex was about to receive a big investment to kick off its Series A funding round, CelLink files—what can only be read as a hastily filed, bare bones—Complaint in this action alleging patent infringement of its fraudulently obtained '070 patent.  (ECF 73 ¶¶ 106-109.)  And now, CelLink, has notified the Court that it intends to voluntarily withdraw its '070 patent infringement claim, after Manaflex has been litigating this matter for almost a year.  (ECF 48 at 3-4.)  CelLink's fraudulent procurement conduct

and reliance on the fruits of that conduct (the patent) in subsequent communications to third parties gives rise to tort and unfair competition claims.  (*See, e.g.*, ECF 37 ¶¶ 98-108.)

## IV.     Manaflex Has Sufficiently Pled an "Unlawful" Prong Based UCL Claim.[4]

The Court dismissed Manaflex's "unlawful"-prong based UCL claim because Manaflex had failed to identify the laws that CelLink's business practices violated.  (ECF 70 at 11.)  Manaflex has now done so.  (ECF 73 at ¶ 113.)  It is important to start with the elements of a California Unfair Competition Law claim.  Manaflex must allege that CelLink: (1) engaged in an unlawful, unfair, or fraudulent business act or practice, Cal. Bus. & Prof. Code § 17200; and (2) "suffered injury in fact and lost money or property as a result of such unfair competition", *Id*. at § 17204.  Thus, Manaflex need only plead that CelLink engaged in an "unlawful" business practice (or multiple) and that this unlawful practice caused Manaflex harm.  Manaflex has done so. As an initial matter, Manaflex has clearly alleged harm:

- Manaflex suffered the cancellation of its executed agreement committing a private equity investor for a $10-$12 million and millions of Series A investment dollars as a direct result of CelLink's underhanded efforts.  (ECF 73 ¶ 4, 136.)

- Manaflex has suffered monetary harm in the form of additional research and development costs encountered as a result of CelLink's anticompetitive conduct. CelLink has improperly leveraged the market position it obtained through fraudulent patent procurement as a basis for launching its disparagement campaign against Manaflex, its potential customers, and its existing customers, resulting in Manaflex' lost revenue and diminished business goodwill. (ECF 73 ¶ 116, 117.)

- In addition, Manaflex has suffered earnings losses resulting from CelLink's willful and malicious use of its fraudulently obtained patent as an instrument to undertake this litigation. *Id.*

Second, Manaflex has alleged that CelLink has engaged in unlawful business practices:

---

[4] Manaflex addresses the "unlawful" prong based UCL claim in this brief and not its UCL claim as based on the "unfair" and "fraudulent" prongs because the Court has addressed those in its first order on CelLink's motion to dismiss. However, Manaflex maintains its position that these claims should also be permitted to move forward because the litigation privilege and *Noerr-Pennington* doctrine do not apply as outlined in Manaflex's response to CelLink's first motion to dismiss.

1

2

3

4

5

6

> With respect to the UCL's 'unlawful' prong, the Court considers whether the Plaintiff alleges an unlawful business practice, i.e., anything that can be called a business practice and that is forbidden by law. *Ticconi v. Blue Shield of Cal. Life & Health Ins*., 160 Cal. App. 4th 528, 539 (2008).  Any federal, state or local law can serve as a predicate for an unlawful business practice action.  *Smith v. State Farm Mut. Auto. Ins. Co*., 93 Cal. App. 4th 700, 718 (2001).  Thus, the UCL incorporates violations of other laws and treats them as unlawful practices independently actionable under the UCL.  *Id*.; *Chabner v. United of Omaha Life Ins. Co*., 225 F.3d 1042, 1048 (9th Cir. 2000).

7

*In re Outlaw Lab'y*, *LLP*, 463 F. Supp. 3d 1068, 1089–90 (S.D. Cal. 2020).

8

9

10

11

12

13

14

15

16

17

Manaflex has alleged that CelLink unlawfully procured its '070 patent by intentional fraud (a standalone claim that CelLink has not moved to dismiss); unlawfully enforced a fraudulently obtained patent against Manaflex (as evidence by its decision to seek to voluntarily dismiss the its patent infringement claim in this case) in an attempt to discourage investors, including the private equity fund that was planning to invest $10-$12 million, a substantial amount for Manaflex; unlawfully and falsely represented its '070 patent to the U.S. Department of Energy to obtain $362 million used to compete with Manaflex; unlawfully and falsely represented its '070 patent to investors to obtain $250 million used to compete with Manaflex, and beyond.  These unlawful practices—taken separately, and certainly as a whole—have, and continue, to significantly harm counterclaimant.  Manaflex will now take each unlawful business practice in turn.

18

### A.    15 U.S.C. § 2.

19

20

21

22

23

24

25

26

27

28

The Supreme Court has already made clear that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act."  *Walker, Inc. v. Food Machinery*, 382 U.S. 172, 174 (1965).  Realizing this is the case, CelLink argues that Manaflex has not sufficiently pled a Sherman Act violation as though that was the claim itself.  Accepting that Manaflex has alleged CelLink's bad intent, CelLink argues that Manaflex has not pled two of the elements to support a Sherman Act violation: (1) possession of monopoly power and (2) causal antitrust injury.  (ECF 74 at 14.)  First, CelLink cites *Abbot Laboratories v. Brennan*, for the proposition that having a patent alone is not sufficient to allege monopoly power.  952 F.2d 1346, 1354 (Fed. Cir. 1991).  However, Manaflex has alleged far more than the fact that CelLink has a patent.  It is also important to note that Manaflex alleged not only that CelLink had monopoly power

-8-

but also that CelLink "*attempt[ed]* to monopolize the market for the production of flexible circuits used in electric vehicles." (ACC at ¶ 137(b) (emphasis added).)

CelLink's insistence that "the antitrust laws were enacted for the protection of competition, not the competitors" and that Manaflex must show that Manaflex suffered antitrust injury is incorrect where a Sherman Act violation is the "unlawful" conduct alleged under the UCL. CelLink is attempting to conflate the two. Manaflex need only show that CelLink is attempting to monopolize the market in violation of the Sherman Act, and that that business practice harmed CelLink. CelLink's actions of fraudulently obtaining an extremely broad patent, fully supports Manaflex's allegation that CelLink is *attempting* to monopolize the market. And, by weaponizing its fraudulent patent, CelLink has caused Manaflex injury through withdrawn investments, hesitant new customers, chilled investors, etc. Such an injury to one competitor undoubtedly chills others from entering the market, CelLink's intended motive.

**B.     Cal. Bus. & Prof. Code § 16720, California's Cartwright Act.**

CelLink's argument is the same here as it is with the Sherman Act but with one difference, CelLink argues that it had no co-conspirators. However, at the time that they signed their declaration "under penalty of perjury" before the PTO, declarations that were in-fact fraudulent, ACC ¶¶ 8, 42, 48, 52, 71, 83, 123, 133, and 137(e), at least some of the named inventors were not CelLink employees and co-conspirators. *See* Ex. A (Dongao Yang, LinkedIn, https://www.linkedin.com/in/dongao, last visited Aug. 6, 2024).[5]

**C.     18 U.S.C. § 371.**

First, CelLink argues that 18 U.S.C. § 371 does not apply because it cannot be in a conspiracy with its own lawyers. (ECF 74 at 16.) However, as discussed above, at least some of

---

[5] Judicial notice of facts is proper where the facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Courts may take judicial notice of matters of public record, as well as documents made publicly available where there is no question as to their authenticity. *Lee v. City of L.A.*, 250 F.3d 668, 688-90 (9th Cir. 2001). Specifically, a Court may take judicial notice of records and reports of administrative bodies and governing bodies for sports. *See Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 452 (N.D. Cal. 2019) (taking judicial notice of article from National Oceanic and Atmospheric Administration); *Matthews v. Nat'l Football League Mgmt. Council*, 688 F.3d 1107, 1113 (9th Cir. 2012) (taking judicial notice of records of sporting events reflected on National Football League's webpage).

1    CelLink's named original inventors were not CelLink employees and agents at the time they engaged

2    in their fraudulent declarations supporting the improperly obtained '070 patent application.

3         Second, CelLink string cites a list of cases standing for the proposition that, to the extent the

4    only issue involved in a state law claim is conduct before the PTO, the claim is preempted by federal

5    law.  (ECF 74 at 20 (citing cases addressing claims that are predicated on "no more than bad faith

6    misconduct", are "identical in scope to" or "predicated . . . squarely on" inequitable conduct, or

7    "do[ ] not allege any actionable conduct other than" fraud before the PTO.)  Here, however, it is not

8    just that CelLink fraudulently obtained its patent, but that it also *sought to fraudulently enforce* the

9    patent obtained by fraud.  *See e.g. In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 317 (N.D. Cal.

10   2007).  That is, CelLink, after using deception to obtain the patent at issue, turned right around and

11   threatened, harassed, intimidated, and harmed Manaflex, its committed investors, and its would-be

12   customers using its fraudulent patent and position of market dominance.

13        **D.    18 U.S.C. § 1001 and 37 C.F.R. 1.56.**

14        The only argument CelLink raises in regard to the allegation that CelLink engaged in fraud

15   before the PTO and the Department of Energy, ECF 73 ¶137 (f) and (g), is that a UCL claim on this

16   basis is preempted by federal law.  As discussed above, that is only the case where the only

17   allegations are fraud before the PTO.  But, here, Manaflex alleged not only fraudulent procurement

18   of the patent but also its fraudulent enforcement.

19                                  **CONCLUSION**

20        For the foregoing reasons, Manaflex requests that the Court deny CelLink's motion to

21   dismiss.

22    Dated:  August 6, 2024                  By:    */s/ Alison L. Anderson*

23                                                   Alison L. Anderson (SBN 275334)
                                                     Joshua Y. Quaye (SBN 325480)
24                                                   BOIES, SCHILLER & FLEXNER LLP
                                                     2029 Century Park East, Suite 1520
25                                                   Los Angeles, CA 90067
                                                     (213) 995-5720
26                                                   alanderson@bsfllp.com
                                                     jquaye@bsfllp.com

27                                                   Eric J. Maurer (*pro hac vice*)
                                                     BOIES, SCHILLER & FLEXNER LLP
28                                                   1401 New York Ave., NW

1

2
Washington, DC 20005
(202) 237-2727
emaurer@bsfllp.com

3
Beko Reblitz-Richardson (SBN 238027)
Boies, Schiller & Flexner LLP
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
(415) 293-6800
brichardson@bsfllp.com

4

5

6
*Attorneys for Defendant Manaflex LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANAFLEX'S OPPOSITION TO MOTION TO DISMISS
Case No. 4:23-cv-04231-HSG

# EXHIBIT A



Did CAD design on Inflight Entertainment Control Panel and LRU case.
Gave tutorials for entry-level engineers to familiarize different CAD software.
Translated specification and datasheet from English to Chinese.

## Education

 **Stanford University**
Master's Degree · Mechanical Engineering · 4.0/4.0

2014 - 2016

 **PENN STATE UNIVERSITY - UNIVERSITY PARK**
BS · Mechanical Engineering · 3.97/4.00

2010 - 2014

 **Chengdu No.7 High School**
-

2006 - 2009

## Volunteer Experience

 **Learning Assistant**
Penn State University

Jan 2013 - May 2013 · 5 months

Education
Helped teaching in a 300 people entry level physics class.
Held office hours to help students on electrical physics problems.

 **Member**
SME

Jan 2013 - May 2013 · 5 months

Science and Technology
Member of the Penn State SME product manufacture group.

 **Public Relation Manager**
Association of Chinese Students and Scholars at Stanford

Sep 2014 - Mar 2015 · 7 months

Social Services
Took responsibility in communication with sponsors of Association of Chinese Students and Scholars at Stanford.
Brought $1200 sponsorship to ACSSS in 2014.
Managed a 150 people open house event with Brilent coaching program.

## Courses

**C++ Programming**
CS 106b

**Computer Aided Product Design**
ME 318

**Design Sketch**
-

**Design and Manufacture**
ME 203

**Dynamics**
-

**Engineering Mechanics**
-

**Fluid Dynamics**
-

**Heat Transfer**
-

**Intro to Robotics**
ME 320

**Material Science**
-

**Smart Product Design**
ME 218

## Projects

**Dynamic Magneto Responsive Vibration Testing System**
Jan 2014
Responsible for setting experiments to test mechanical properties of MREs.
Responsible for using NI compact DAQ with Labview to analyze data.

Other creators

   

Jan 2013
Responsible for CAD modeling and utilizing 3-D printer to produce components.
Responsible for programming to simulate the performance of alpha and beta test.

Other creators



### Remote Controlled Hovercraft Design
Mar 2015 - May 2015
Designed and built a hovercraft to compete with others through xbee remote control.
Designed and established remote control communication protocol with other teams.
Did multi-processor programming includes PIC16F690 and Tiva Launchpad.
Designed the controller and GUI on android smartphone to give control feedback.
Check: http://weareteam11.weebly.com/

Other creators

 

See project

### Automatic Racing Kart Design
2015 - Mar 2015
Led and managed team to integrate the work across multiple disciplines including mechanical,
electrical and software design.
Designed vehicle chassis and actuator structure, including motor characterization and PID control.
Communicated with team under heavily loaded condition, improving corporation.
Check: http://skysduck.weebly.com/

Other creators

  

See project

### Party Billiard Cue Design and Manufacture
Sep 2014 - Dec 2014
Designed a unique and attractive party billiard cue through physical prototypes.
Adjusted design through rendered CAD model.
Integrated manufacturing process including sand casting, milling, wood lathe and so on into the
product fabrication.

### Quidditch Game Machine Design
Sep 2014 - Dec 2014
Took responsibility in both electronics and software design.
Designed and built machine within 2 weeks. Integrated modules including audio, LEDs, servos,
accelerometer and IR emitter/sensor.
Kept communication with the team to integrate the work.
Check:http://quidditchgame.weebly.com

Other creators

  

See project

---

## Honors & Awards

### Wharton Scholarship
Penn State University
Apr 2013

### The Evan Pugh Scholar Award - Junior
Penn State Unveristy
2013

### Certified SolidWorks Associate
SOLIDWORKS
2012

### Harding Louis Memorial Scholarship
Penn State University
2012

### 2011 The President Sparks Award
Penn State University
2011

### Professor H. A. Everett Memorial Scholarship
Penn State University
2011

### 2010 The President's Freshman Award
Penn State University
2010

### Gold Prize and Judges Award of 2008 VEX Robot World Championship
VEX robot association
2008

---

## Languages

Chinese
Native or bilingual proficiency

English
Professional working proficiency

## More activity by Dongao

 Meet the SIM Team 05: Corey Axelowitz, Principal Hardware Engineer Corey is a senior electrical and production engineer who has led best-of-breed...
Liked by Dongao Yang

 Happy to have #Flexiv China 2020 #Kickoff conference held in Foshan! After two days fulfilled with diverse activities, comprehensive review of 2019...
Liked by Dongao Yang

 🎉 Today, I'm happy to announce that my book of design thinking is published!!!🍱
—————————————— 2 and half years ago, I came to Japan and I saw...
Liked by Dongao Yang

I'm excited to participate in the development of technology that enhances surgery beyond the limits of human hands and eyes toward minimally invasive...
Liked by Dongao Yang

 I'm celebrating 23 years at Apple this year, working in Worldwide Operations, Diagnostics, and Hardware Test Engineering. What an amazing journey it...
Liked by Dongao Yang

 Cody Shaw #称赞卡 #靠谱队友
Shared by Dongao Yang

 MacLean Kuraitis #称赞卡 #风趣幽默
Shared by Dongao Yang

 Let us keep going...
Liked by Dongao Yang

View Dongao's full profile

See who you know in common

Get introduced

Contact Dongao directly

Join to view full profile

LinkedIn © 2024   About   Accessibility   User Agreement   Privacy Policy   Your California Privacy Choices   Cookie Policy   Copyright Policy   Brand Policy   Guest Controls   Community Guidelines   Language