UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLINK CORP.,<br><br>    Plaintiff,<br><br>v.<br><br>MANAFLEX LLC, et al.,<br><br>    Defendants. | Case No. 23-cv-04231-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST FOR JUDICIAL NOTICE, AND GRANTING IN PART AND DENYING IN PART PLAINTIFF AND DEFENDANTS' MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. No. 135, 136, 142, 148 |

Pending before the Court are Defendants Manaflex LLC ("Manaflex"), Robert Lane, and Augusto Barton's (collectively, "Defendants") motion to dismiss Counts IV and VII-IX of Plaintiff CelLink Corp.'s ("CelLink") Second Amended Complaint ("SAC") (Dkt. No. 135 ("Mot.")), Defendants' request for judicial notice (*id*. at 15), and CelLink and Defendants' motions to file under seal (Dkt. Nos. 136, 142, 148).[1]  The Court finds this matter appropriate for disposition without oral argument and takes it under submission.  *See* Civil L.R. 7-1(b).  For the following reasons, the Court **DENIES** Defendants' motion to dismiss (Dkt. No. 136), **GRANTS IN PART** and **DENIES IN PART** Defendants' request for judicial notice (*id*. at 15), **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to file under seal (Dkt. No. 136), and **GRANTS** CelLink and Defendants' motions to file under seal (Dkt. Nos. 142, 148).

## I.   BACKGROUND

On August 18, 2023, CelLink filed suit against Defendant Manaflex, accusing Manaflex of infringing U.S. Patent No. 11,116,070 (the "'070 Patent") and misappropriating CelLink's trade

---

[1] For ease of reference, the Court refers to the PDF pages rather than the document's internal pagination unless otherwise noted.

secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836. *See* Dkt. No. 1. On November 19, 2024, the Court granted CelLink leave to amend its complaint to add Messrs. Lane and Barton as defendants to the trade secret misappropriation claim, two patent infringement claims against Manaflex for U.S. Patent Nos. 12,035,459 (the "'459 Patent") and 12,040,511 (the "'511 Patent"), and three correction of inventorship claims against Manaflex for U.S. Patent Nos. 11,490,523 (the "'523 Patent"), 11,026,332 (the "'332 Patent") and 10,842,025 (the "'025 Patent") (collectively, the "Manaflex Patents"). Dkt. No. 105. Defendants moved to dismiss CelLink's first amended complaint ("FAC"). Dkt. No. 121. The Court granted Defendants motion and dismissed CelLink's DTSA claims against Messrs. Lane and Barton and correction of inventorship claims against Manaflex. Dkt. No. 128 ("Order"). CelLink filed a second amended complaint ("SAC") on April 30, 2025, which realleges DTSA claims against Messrs. Lane and Barton and correction of inventorship claims against Manaflex. Dkt. No. 132.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  On a motion to dismiss counterclaims, the court "applies these same standard" and "constru[es] the pleadings in the light most favorable to the pleading party."  *AbCellera Biologics Inc. v. Bruker Cellular Analysis*, No. 20-CV-08624-JST, 2024 WL 37213, at *3 (N.D. Cal. Jan. 2, 2024) (citation omitted).

**III.   DISCUSSION**

   **A.   Request for Judicial Notice**

The Court first addresses Defendants' request for judicial notice of Exhibits 1–11 to the Maurer Declaration.  Dkt. No. 135 at 15.

In *Khoja v. Orexigen Therapeutics*, the Ninth Circuit discussed the judicial notice rule and incorporation by reference doctrine.  *See* 899 F.3d 988 (9th Cir. 2018).  Under Federal Rule of Evidence 201, a court may take judicial notice of a fact "not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Accordingly, a court may take "judicial notice of matters of public record," but "cannot take judicial notice of disputed facts contained in such public records."  *Khoja*, 899 F.3d at 999 (citation and quotations omitted).  The Ninth Circuit has clarified that if a court takes judicial notice of a document, it must specify what facts it judicially noticed from the document.  *Id*. at 999.  Further, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Id*.  As an example, the Ninth Circuit held that for a transcript of a conference call, the court may take judicial notice of the fact that there was a conference call on the specified date, but may not take judicial notice of a fact mentioned in the transcript, because the substance "is subject to varying interpretations, and there is a reasonable dispute as to what the [document] establishes."  *Id*. at 999–1000.

Separately, the incorporation by reference doctrine is a judicially created doctrine that allows a court to consider certain documents as though they were part of the complaint itself.  *Id*. at 1002.  This is to prevent plaintiffs from cherry-picking certain portions of documents that support their claims, while omitting portions that weaken their claims.  *Id*.  Incorporation by

3

1  reference is appropriate "if the plaintiff refers extensively to the document or the document forms
2  the basis of plaintiff's claim." *Khoja*, 899 F.3d at 1002. However, "the mere mention of the
3  existence of a document is insufficient to incorporate the contents" of a document. *Id*. at 1002.
4  And while a court "may assume [an incorporated document's] contents are true for purposes of a
5  motion to dismiss … it is improper to assume the truth of an incorporated document if such
6  assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id*.

7  ████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████
10 ████████████████ Dkt. No. 136-3 ¶ 3. Exhibits 1 and 2 are referenced throughout CelLink's
11 SAC, and CelLink relies on the MNDA and the August 10, 2016 email for its DTSA claim. *See*
12 SAC ¶¶ 12–17, 115, 121–22. Because Exhibits 1 and 2 form the basis of CelLink's DTSA claim
13 and CelLink does not dispute the authenticity of these exhibits, the Court considers Exhibits 1 and
14 2 incorporated by reference in the SAC.

15 Exhibits 3–8 are copies of U.S. patents and patent application publications. Exhibit 3 is a
16 copy of U.S. Patent Application Pub. No. 2013/0112233 A1, which names Kevin Michael
17 Coakley as the inventor. Dkt. No. 136-3 ¶ 5. Exhibits 4 and 5 are copies of U.S. Patent Nos.
18 9,147,875 and 10,211,443, respectively, which both name Kevin Michael Coakley and Malcolm
19 Brown as the inventors and CelLink as the assignee. *Id*. The patents and patent application
20 publications contained in Exhibits 3–6 are listed in the "References Cited" section of the '459
21 Patent. Dkt. No. 136-3 ¶ 5. Exhibit 6–8 are copies of U.S. Patent Application Pub. Nos.
22 2003/0062347 A1, 2008/0083715 A1, and 2009/0007421 A1, respectively. *Id*. The patent
23 application publications contained in Exhibits 6–8 are listed in the "References Cited" section of
24 the '523 Patent. Dkt. No. 136-3 ¶ 5. Defendants do not "simply ask the Court to take judicial
25 notice of the fact that the[se] documents were in the public realm." *Eastman v. Apple, Inc.*, No.
26 18-CV-05929-JST, 2019 WL 3934805, at *5 (N.D. Cal. Aug. 20, 2019). ████████████
27 ████████████████████████████████████████████████████████████████████
28 ████████████████████████████████████████████████████████████████████

4

██████████████████████████████████████████████████████

██████ Mot. at 8–10. Although "[c]ourts may [] take judicial notice of documents issued by the PTO[,]" *Lexos Media IP, LLC v. eBay Inc.*, 722 F. Supp. 3d 1042, 1049 (N.D. Cal. 2024), ███████████████████████████████████████████████████ ███. *See CODA Dev. S.R.O. v. Goodyear Tire & Rubber Co.*, 916 F.3d 1350, 1360 (Fed. Cir. 2019). Accordingly, the Court takes judicial notice of the fact that Exhibits 3–8 were in the public realm but declines to judicially notice the contents of these exhibits to draw the factual conclusions Defendants posit.

Exhibits 9–11 are copies of publicly accessible webpages. Exhibit 9 is a printout dated May 1, 2006 and entitled "Patterning of flex circuits." The printout was downloaded from https://www.laserfocusworld.com/industrial-laser-solutions/article/14215557/patterning-of-flexcircuits. Exhibit 10 is a printout dated September 1, 2010 and entitled "PRODUCT FOCUS: GALVANOMETER SCANNERS: What you need to know to buy a galvo-positioner." The printout was downloaded from https://www.laserfocusworld.com/optics/article/16567973/product-focus-galvanometer-scannerswhat-you-need-to-know-to-buy-a-galvo-positioner. Exhibit 11 is an article downloaded from the Internet archive "Wayback Machine" at https://web.archive.org/web/20120418034650/http://www.industriallasers.com/articles/2012/04/contract-laser-ablation-of-high-performance-electroniccomponents.html. The article is dated April 12, 2012 and is entitled "Contract laser ablation of high-performance electronic components." "Publicly accessible websites and news articles are proper subjects of judicial notice." *Chan v. ArcSoft, Inc.*, No. 19-CV-05836-JSW, 2020 WL 13891272, at *3 (N.D. Cal. Sept. 16, 2020). "However, to the extent the Court can take judicial notice of [] articles, it can do so only to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Id*. Accordingly, the Court takes judicial notice of Exhibits 9–11 "only for the fact that they were in the public realm, not for the truth of the articles' contents." *Id*.

**B.     Motions to Seal**

The Court next addresses the parties' motions to seal. Dkt. Nos. 136, 142, 148. Courts generally apply a "compelling reasons" standard when considering motions to seal documents.

*Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The Court must "balance[] the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* Civil Local Rule 79-5 supplements the compelling reasons standard set forth in *Kamakana*: the party seeking to file a document or portions of it under seal "must explore all reasonable alternatives to filing documents under seal, minimize the number of documents filed under seal, and avoid wherever possible sealing entire documents . . . ." Civil L.R. 79-5(a). The party must further explain the interests that warrant sealing, the injury that will result if sealing is declined, and why a less restrictive alternative to sealing is not sufficient. *See* Civil L.R. 79-5(c).

Records attached to nondispositive motions must meet the lower "good cause" standard of Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only

6

tangentially related, to the underlying cause of action." *See Kamakana*, 447 F.3d at 1179–80 (quotations omitted). This requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

Defendants seek to seal Exhibits 1 and 2 to their motion to dismiss and portions of their opening brief, declaration of Eric Maurer in support of their motion to dismiss ("Maurer Declaration"), and reply brief referencing Exhibits 1 and 2. Dkt. No. 136 at 2–3; Dkt. No. 148 at 2. CelLink seeks to seal portions of its opposition to Defendants' motion to dismiss. Dkt. No. 142 at 2. Because Defendants' motion to dismiss is a dispositive motion to the underlying cause of action, the Court applies the "compelling reasons" standard.

The Court finds compelling reasons exist to seal Exhibits 1 and 2. Exhibit 1  Dkt. No. 139 ¶ 8. *Id.* *Id.* Exhibit 2 *Id.* ¶ 10. *Id.* CelLink contends that *Id.* The Court finds CelLink has made a particularized showing that specific prejudice or harm will result if Exhibits 1 and 2 are publicly disclosed. *See Blockchain Innovation, LLC v. Franklin Res., Inc.*, No. 21-CV-08787-TSH, 2024 WL 4394758, at

*2 (N.D. Cal. Oct. 3, 2024) ("Courts in this district have routinely sealed documents that contain trade secret information and confidential or proprietary information that may cause competitive harm if disclosed.").

The parties seek to redact lines 2:10–14, 3:7–15, 3:18–21, 3:24–25, 4:1–28, 5:1–7, 5:9–26, 5:23 of Defendants' motion to dismiss (Dkt. No. 136), lines 1:7–10 and 1:13–15 of the Maurer Declaration (*id.*), lines 4:26–27 and 5:4–10 of CelLink's opposition brief (Dkt. No. 142), and lines 3:17–18, 3:25, 4:1, 4:10–19, 4:21–23 of Defendants' reply brief (Dkt. No. 148), as these portions reference CelLink's confidential information contained in Exhibits 1 and 2.  Dkt. No. 136 at 2. With the exception of lines 1:13–15 of the Maurer Declaration, the Court finds compelling reasons exist to seal the identified lines of Defendants' motion to dismiss, the Maurer Declaration, CelLink's opposition brief, and Defendants' reply brief.[2]  Accordingly, the Court **GRANTS** Defendants' motion to seal lines 2:10–14, 3:7–15, 3:18–21, 3:24–25, 4:1–28, 5:1–7, 5:9–26, 5:23 of Defendants' motion to dismiss and lines 1:7–10 of the Maurer Declaration (Dkt. No. 136), CelLink's motion to seal lines 4:26–27 and 5:4–10 of its opposition brief (Dkt. No. 142), and Defendants' motion to seal lines 3:17–18, 3:25, 4:1, 4:10–19, 4:21–23 of their reply brief (Dkt. No. 148), but **DENIES** Defendants' motion to seal lines 1:13–15 of the Maurer Declaration (Dkt. No. 136).

### C. Motion to Dismiss

Defendants once again move to dismiss CelLink's DTSA claims against Messrs. Lane and Barton and correction of inventorship claims against Manaflex.  Mot. at 12–21.  Defendants argue that the SAC fails to remedy the deficiencies the Court previously identified in granting Defendants' first motion to dismiss.  The Court disagrees.

#### i. Counts VII–IX (Correction of Inventorship) Against Defendant Manaflex

To plead a correction of inventorship claim, a plaintiff must allege facts from which a court can infer (1) the plaintiff "made a more-than-insignificant contribution to the conception of at least one claim of the patent" and (2) "there was some element of joint behavior, such as 'collaboration

---

[2] CelLink represents that lines 1:13–15 of the Maurer Declaration do not need to be sealed.  Dkt. No. 139 ¶ 14.

or working under common direction.'" *Fibrogen, Inc. v. Hangzhou Andao Pharm. Ltd.*, No. 22-cv-07148-AMO, 2024 WL 1199018, at *4 (N.D. Cal. March 20, 2024) (quotations and citation omitted). The Court previously dismissed CelLink's correction of inventorship claims. Order at 2–5. The FAC generally alleged that the Manaflex Patents "claim[ed] subject matter that was not conceived of by Mr. Lane and which Manaflex obtained from discussions with CelLink employees" and that "Lane and Barton obtained and derived some or all of this subject matter through contact with CelLink which resulted in the disclosure of CelLink's trade secrets under the April 2016 MNDA." Dkt. No. 106 ("FAC") ¶¶ 118, 123, 218. But the FAC did not "identify a single claim or claim limitation to which the CelLink Inventors allegedly contributed" or "allege facts from which a court could infer some element of joint behavior." Order at 3–5 (quotations and citation omitted).

    a. Contribution to the Conception of At Least One Claim of the Patent

The SAC sets forth specific allegations identifying the claims to which Messrs. Coakley and Brown allegedly contributed. For example, CelLink alleges that "Mr. Coakley and Mr. Brown contributed to the conception of, at the very least, Claim 1–3 [and] 5 of the '523 Patent." SAC ¶ 128. More specifically, the SAC alleges that Mr. Coakley and Mr. Brown "conceived of a method for producing flex circuits ▮▮▮▮ and "this method involved the use of a ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ ▮▮▮▮ *Id*. CelLink also alleges that "Mr. Coakley and Mr. Brown contributed to the conception of, at the very least, Claims 1, 12, and 15–16 of the '332 Patent[,]" as Messrs. Coakley and Brown's "method of producing flexible circuits through a ▮▮▮▮ . . . involved the use of ▮▮▮▮ ▮▮▮▮

9

██████████████████████████████████████ *Id.* ¶ 136. CelLink also alleges that Mr. Coakley and Mr. Brown contributed to the conception of, at the very least, Claims 1–2[] [and] 11 of the '025 Patent[,]" as Messrs. Coakley and Brown's "method of producing flexible circuits . . . involved the use of ███████████████████████████████████████████████ *Id.* ¶ 145.[3]

Manaflex argues that "th[e] items Messrs. Coakley and Brown claim to have 'conceived' were known well before Mr. Lane filed his patent applications in 2020[] and so too were the alleged 'trade secrets' CelLink claims to have shared with Tesla . . . ." Mot. at 15. In so arguing, Manaflex relies on Exhibits 3–8 of the Maurer Declaration. *Id.* ("The charts . . . illustrate where in the exhibits the concepts are found."). But the Federal Circuit has expressly cautioned courts against relying on these types of extrinsic materials at the motion to dismiss stage. *See CODA*, 916 F.3d at 1360 ("But whether the [] article actually disclosed those alleged novel trade secrets was a reasonably (indeed, hotly) disputed factual issue—one outside any judicial-notice exception to the general rule requiring conversion, and one that should not have been resolved adversely to Plaintiffs on a motion to dismiss."); *see also id.* at 1360 n.7 ("We note further that, to the extent the district court relied on the [] patent and [] prior, published patent application to determine that the alleged novel trade secrets were already in the prior art . . . such a determination was improper at this stage, for at least the reason that it constituted an inference adverse to Plaintiffs when there were other reasonable inferences to draw in their favor."); *Eastman v. Apple, Inc.*, No. 18-CV-05929-JST, 2019 WL 3934805, at *6 (N.D. Cal. Aug. 20, 2019) (rejecting defendant's argument that plaintiff's "ideas [were] all described in the background and summary sections of the [] patent[] and therefore constitute[d] prior art that c[ould] [] not be an inventive contribution" and explaining that "the Federal Circuit in *Coda* instructed that district courts should generally refrain

---

[3] The SAC also alleges that Mr. Barton observed CelLink's ████████████████████████████ ████████████████ when he toured the CelLink factory floor in 2018, and this ████████ was later ███████████████████████████. SAC ¶ 145. CelLink alleges that Mr. Lane gained access to this information through contact with Mr. Barton. *Id.* ¶ 146. Although the SAC does not explain how Mr. Barton conveyed this information to Mr. Lane, CelLink has pled that Messrs. Coakley and Lane contributed to Claims 1 and 2 of the '025 Patent. That is enough. *See CODA*, 916 F.3d at 1358 ("He or she need not make the same type or amount of contribution' to the invention nor contribute to every claim—a contribution to one claim is enough.") (citation omitted).

10

from making this determination on a motion to dismiss"). The Court declines to convert Defendants' motion to dismiss into a motion for summary judgment, *see Civitaf Corp. v. Federated Mut. Ins. Co.*, 2005 WL 8162529, at *2 (N.D. Cal. May 4, 2005) ("Generally, if the Court chooses to consider extrinsic evidence, the motion to dismiss is converted into a motion for summary judgment."), and denies Defendants' motion to dismiss on this ground.

Manaflex's remaining arguments are not persuasive. *See* Mot. at 15 (arguing the SAC "merely states what Coakley and Brown 'conceived'—not what they conveyed to Mr. Lane" and "none of the identified claims recite aluminum, a galvanometer, or 'varying thickness'"). CelLink has sufficiently alleged how Mr. Lane accessed CelLink's alleged trade secrets, including Messrs. Coakley and Brown's "method of producing flexible circuits through a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." That the identified claims do not specifically recite "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" is not determinative, as the SAC explains how Messrs. Coakley and Brown's contributions "relate to specific systems [and methods] claimed in each of the [Manaflex] Patents . . . ." *Regents of Univ. of California v. Chen*, No. 16-CV-07396-EMC, 2017 WL 3215356, at *4 (N.D. Cal. July 26, 2017). "[O]n this record the Court cannot say as a matter of law that Plaintiff's alleged contributions are not encompassed by the . . . Patent." *Betak v. Miftakhov*, No. 19-CV-02516-JSC, 2019 WL 5684523, at *8 (N.D. Cal. Nov. 1, 2019). Accordingly, the Court finds the allegations set forth in the SAC are sufficient to plausibly plead that Messrs. Coakley and Brown contributed to the inventions claimed in the Manaflex Patents.[4]

b.  Joint Behavior

CelLink alleges that "Mr. Coakley and Mr. Brown directly and indirectly collaborated with Mr. Lane on the subject matter disclosed in the '523 Patent." SAC ¶ 129. More specifically, CelLink alleges "[o]n information and belief, [that] Mr. Lane gained access to confidential and

---

[4] The Court further notes that the FAC sought to add "Kevin Coakley, Malcolm Brown, Dongao Yang, Michael Miller, Paul Lego and/or Paul Tsao" as named inventors but did not allege how each of these individuals contributed to any claim of the Manaflex Patents. *See* FAC ¶¶ 120, 125, 130. The SAC, however, only seeks to add Messrs. Coakley and Brown as named inventors and specifically alleges what and how they contributed to certain claims of the Manaflex Patents. *See* SAC ¶¶ 132, 140, 149.

trade secret manufacturing processes conceived by Mr. Coakley and Mr. Brown through [Mr. Lane's] position at Tesla during 2016 and through contact with Mr. Barton" and then "built off and relied, in part, on CelLink's confidential and trade secret information conceived of by Mr. Coakley and Mr. Brown to secure" the Manaflex Patents. *Id.* ¶¶ 129, 137, 146. Manaflex argues that the SAC "fails to adequately allege joint inventorship for an actual claim in each of the three [Manaflex] [P]atents." Mot. at 13. Manaflex contends that Federal Circuit precedent requires (1) "each 'inventor must contribute to the joint arrival at a definite and permanent idea of the invention as it will be used in practice'" and (2) "inventors have some open line of communication during or in temporal proximity to their inventive efforts." *Id.* (citations omitted). Manaflex argues that "th[e] latter requirement—that there was (a) an 'open line of communication' (b) in 'temporal proximity' to (c) the alleged 'inventive efforts' of Lane, Coakley, and Brown—cannot possibly be met." *Id.* Manaflex specifically argues that "[t]he allegation that Mr. Lane may have received confidential information from Messrs. Coakley and Brown at that single [May 9, 2016] meeting is 'not enough' to establish collaboration[,]" as CelLink does not allege Mr. Lane was in communication or under common direction with Messrs. Coakley and Brown after the May 2016 meeting and Mr. Lane did not file the applications for the Manaflex Patents until summer 2020. *Id.* at 13–14. The Court disagrees.

"The test for establishing a quantum of collaboration between a party and named inventors is not demanding and requires only an element of joint behavior." *Theranos, Inc. v. Fuisz Pharma LLC*, No. 5:11-CV-05236-PSG, 2013 WL 5304134, at *3 (N.D. Cal. Sept. 20, 2013). Here, the SAC alleges that Mr. Lane repeatedly attempted to obtain technical information about CelLink's proprietary manufacturing processes (SAC ¶¶ 6–10), and that after CelLink and Tesla executed the MNDA in April 2016, "Mr. Coakley emailed Mr. Lane, along with other contacts at Tesla, that their collaboration could proceed, specifically identifying Mr. Lane as a member of the 'core group' for the relationship moving forward" (*id.* ¶ 12). The SAC also alleges that "on May 9, 2016, CelLink (through Mr. Coakley and Mr. Brown) met with several individuals from Tesla and discussed CelLink's confidential and trade secret circuit manufacturing process[,]" and "[a]t that meeting, CelLink disclosed confidential and trade secret information . . . ." *Id.* ¶ 14. CelLink

12

1  further alleges "[o]n information and belief, [that] Mr. Lane either attended the May 9, 2016
2  meeting or gained access to the information disclosed at that meeting[,]" as "confidential
3  information shared at that May 9, 2016 meeting would later ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮" *Id.* ¶ 15.  These allegations are sufficient to survive a motion to dismiss.  *See Intel Corp. v.*
5  *Tela Innovations, Inc.*, No. 3:18-CV-02848-WHO, 2019 WL 2476620, at *6 (N.D. Cal. June 13,
6  2019) ("While a single meeting may not ultimately be enough to show joint inventorship, the
7  pleadings are sufficient at this stage."); *see also Theranos, Inc. v. Fuisz Pharma LLC*, No. 5:11-
8  CV-05236-PSG, 2013 WL 5304134, at *3 (N.D. Cal. Sept. 20, 2013) ("The test [for establishing a
9  quantum of collaboration between a party and named inventors] has been satisfied by such tenuous
10 collaborations as one inventor seeing the report of another and building upon it, or merely hearing
11 an inventive suggestion at a meeting.").  The Court finds CelLink has alleged facts from which the
12 Court can infer "some element of joint behavior." *Fibrogen, Inc.*, 2024 WL 1199018, at *4.
13 Accordingly, the Court **DENIES** Defendants' motion to dismiss CelLink's correction of
14 inventorship claims.

   **ii.   Count IV (Trade Secret Misappropriation) Against Defendants Lane and Barton**

   To state a claim for trade secret misappropriation under the DTSA, a plaintiff must allege
"(1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade
secret; and (3) that the misappropriation caused or threatened damage to the plaintiff."
*InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020).  Under the
DTSA, "misappropriation means either the (1) acquisition of a trade secret by another person who
knows or has reason to know that the trade secret was acquired by improper means; or the (2)
disclosure or use of a trade secret of another without express or implied consent." *Albert's
Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 473 (N.D. Cal. 2020).

   Defendants argue that CelLink's DTSA claim against Mr. Barton and Mr. Lane as
individuals . . . should, once again, be dismissed." Mot. at 16.  Defendants argue that "[w]hile
CelLink has attempted to add 'examples' of information shared and conclusory language based
'on information and belief', these claims continue to contain little more than conclusory assertions

1  parroting the DTSA claim standard and completely fail to allege specific allegations against Mr.
2  Barton and Mr. Lane, individually." *Id*. CelLink counters that Defendants' motion to dismiss
3  "improperly seeks to resolve factual issues at the motion to dismiss stage, and [] ignores the
4  applicable standard for pleading trade secret misappropriation." Dkt. No. 143 at 11.

         a.   Trade Secret Misappropriation Claim Against Mr. Barton

6        The Court previously dismissed CelLink's trade secret misappropriation claim against Mr.
7  Barton, finding that "[w]hile CelLink ha[d] sufficiently pled Mr. Barton's knowledge of the
8  alleged trade secrets, it ha[d] not sufficiently pled that he misappropriated them." Order at 9.
9  CelLink's SAC now alleges "[o]n information and belief, [that] after touring CelLink's factory
10 floor, Mr. Barton advised Mr. Lane of the confidential and trade secret manufacturing processes
11 he observed to assist Manaflex in developing its own manufacturing process." SAC ¶ 22.
12 CelLink alleges that "Manaflex is currently using the same or substantially similar technology in
13 its manufacturing process for flexible circuits that Mr. Barton observed during his tour of
14 CelLink's factor floor." *Id*. CelLink further alleges that Manaflex is specifically "employing a
15 ▮▮▮▮▮▮▮▮ similar to the one used by CelLink during 2018, which Mr. Barton directly
16 observed during the factor tour, and which was a proprietary process to CelLink and unknown in
17 the flexible circuit industry at the time." *Id*.

18       Defendants contend that CelLink has again failed to plausibly allege that Mr. Barton
19 misappropriated CelLink's alleged trade secrets. Defendants argue that "the only fact CelLink
20 points to in order to show that Manaflex (and presumably Mr. Barton) 'misappropriated' CelLink
21 'trade secrets' is the patent application Mr. Lane filed for in June 2020." Mot. at 17–18.
22 Defendants further argue that CelLink's new allegations "are the same facts the Court already
23 decided were insufficient." *Id*. at 18. Defendants mischaracterize the new allegations set forth in
24 the SAC and the Court's prior order. CelLink's FAC accused Mr. Barton of misappropriation
25 based only on the disclosures made in Manaflex's patents and patent applications, *see* FAC ¶¶ 13,
26 114–15, and the Court found "the FAC [was] devoid of any factual allegations suggesting Messrs.
27 Lane and Barton worked together to secure the '921 Patent." Order at 8. The SAC, however, sets
28 forth allegations of misappropriation based on Manaflex's use of CelLink's alleged trade secrets.

14

SAC ¶ 22 ("Manaflex is currently using the same or substantially similar technology in its manufacturing process for flexible circuits that Mr. Barton observed during his tour of CelLink's factor floor.  Specifically, Manaflex is currently employing a ▮▮▮▮▮▮▮ similar to the one used by CelLink during 2018, which Mr. Barton directly observed during the factor tour, and which was a proprietary process to CelLink and unknown in the flexible circuit industry at the time.").  These new factual allegations "make the inference of misappropriation plausible." *Auris Health*, 2023 WL 7284156 at *4; *see also TRIGO ADR Americas, LLC v. OEM Logistics, LLC*, No. 23-CV-2219-AGS-MMP, 2025 WL 276149, at *2 (S.D. Cal. Jan. 23, 2025) ("Among other things, TRIGO alleges that (1) [defendants] Clarke, Nicholas, and OEM 'had access to the secret' vetting process and intranet tool . . . and that (2) TRIGO's vetting process and intranet tool 'share similar features' with OEM's versions, which is sufficient to plead misappropriation."); *Fujikura Composite Am., Inc. v. Dee*, No. 24-CV-782 JLS (MSB), 2024 WL 3261214, at *12 (S.D. Cal. June 28, 2024) ("The above evidence shows [defendant] (1) had access to Plaintiff's trade secret concept and (2) thereafter developed a product using a similar concept. Courts have inferred likely use of a competitor's trade secret based on similar evidence.").  Accordingly, the Court **DENIES** Defendants' motion to dismiss CelLink's trade secret misappropriation claim against Mr. Barton.

### b. Trade Secret Misappropriation Claim Against Mr. Lane

The Court previously dismissed CelLink's trade secret misappropriation claim against Mr. Lane, finding CelLink had not "plausibly allege[d] that Mr. Lane had knowledge of CelLink's trade secrets."  Order at 10.  CelLink's SAC makes several new allegations regarding Mr. Lane. For example, the SAC now alleges that Mr. Lane "repeatedly pressed Mr. Coakley and Mr. Brown to disclose technical information regarding its manufacturing process as well as the materials used in CelLink's parts."  SAC ¶ 8; *see also id*. ¶¶ 6, 9–10.  The SAC also alleges that after CelLink and Tesla executed the MND, "Mr. Coakley emailed Mr. Lane, along with other contacts at Tesla, that their collaboration could proceed, specifically identifying Mr. Lane as a member of the 'core group' for the relationship moving forward."  *Id*. ¶ 12.  The SAC further alleges that "on May 9, 2016, CelLink (through Mr. Coakley and Mr. Brown) met with several individuals from Tesla and discussed CelLink's confidential and trade secret circuit manufacturing process."  SAC ¶ 14.

15

CelLink alleges "[o]n information and belief, [that] Mr. Lane either attended the May 9, 2016 meeting or gained access to the information disclosed at that meeting." *Id.* ¶ 15. CelLink further alleges that the "confidential information shared at that May 9, 2016 meeting would later be disclosed in patents filed by Mr. Lane." *Id.*

Defendants take issue with CelLink's allegations made "on information and belief." Mot. at 20; *see also* SAC ¶¶ 14–15. Defendants argue that CelLink's allegations are "an improper use of 'on information and belief[,]'" because "CelLink's principals were at that meeting and if they had a memory of Mr. Lane being at that meeting or anything to support this generalize allegation, CelLink would not have to include 'on information and belief.'" Mot. at 21. However, "[t]he Ninth Circuit has clarified that the *Iqbal/Twombly* plausibility standard permits allegations on information and belief where: (1) 'the facts are peculiarly within the possession and control of the defendants'; or (2) 'the belief is based on factual information that makes the inference or culpability plausible.'" *Auris Health, Inc. v. Noah Med. Corp.*, No. 22-CV-08073-AMO, 2023 WL 7284156, at *4 (N.D. Cal. Nov. 3, 2023) (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)). Here, CelLink's allegations "on information and belief" are based on factual allegations that make Mr. Lane's knowledge of CelLink's purported trade secrets plausible. *See* SAC ¶¶ 5–16. CelLink specifically alleges that: (1) Mr. Lane repeatedly attempted to obtain information about CelLink's proprietary manufacturing process (SAC ¶¶ 6, 8–10); (2) Mr. Lane was specifically identified as a "member of the 'core group' for the relationship [between CelLink and Tesla] moving forward" (*id.* ¶ 12); and (3) CelLink disclosed the use of "███████ ███████████████" during the May 9, 2016 meeting with Tesla, and that information was later disclosed in patents filed by Mr. Lane (*id.* ¶¶ 14–16). These allegations make it plausible that Mr. Lane had knowledge of CelLink's alleged trade secrets. *See Auris Health*, 2023 WL 7284156, at *4 (finding plaintiff's factual allegations sufficient to support plaintiff's "'information and belief' allegations that [defendant] exfiltrated the trade secret documents and stored them on his personal storage accounts and computer"). CelLink has plausibly alleged that Mr. Lane had knowledge of CelLink's trade secrets. Accordingly, the Court **DENIES** Defendants' motion to dismiss CelLink's trade secret misappropriation claim against Mr. Lane.

16

IV. **CONCLUSION**

The Court **DENIES** Defendants' motion to dismiss (Dkt. No. 135), **GRANTS IN PART** and **DENIES IN PART** Defendants' request for judicial notice (*id.*), **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to file under seal (Dkt. No. 136), and **GRANTS** CelLink and Defendants' motions to file under seal (Dkt. Nos. 142, 148).

**IT IS SO ORDERED.**

Dated: 7/17/2025

*/s/ Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge